# ***EXHIBIT 1***

Fulton County Superior Court
***EFILED***KB
Date: 1/27/2016 9:13:47 AM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC.<br><br>Petitioners,<br><br>v.<br><br>CMGRP, INC. d/b/a ROGERS & COWAN,<br><br>Respondent. | ) | CIVIL ACTION NUMBER: **2016CV270661** |

**<u>VERIFIED PETITION FOR DECLARATORY JUDGMENT</u>**

Maggie Gallant ("Gallant") and Agency for the Performing Arts ("APA") petition this Court, pursuant to O.C.G.A. § 9-4-2 and 9-4-5, for a declaration as to the legal effect of certain restrictive covenants contained in an Employment Agreement (the "Agreement") between Gallant and her former employer, Rogers & Cowan ("R&C"), a unit of CMGRP, Inc. ("CMGRP"). A true copy of the Agreement is attached hereto as Exhibit "A". CMGRP required that Gallant sign the Agreement as a condition of her employment, effective October 1, 2008. The Covenant at § 7.05(b) of the Agreement is overbroad in scope and therefore void and unenforceable as a contract in restraint of trade in violation of Art. III, Sec. VII, Par. VII of the Georgia Constitution of 1976. As the Agreement pre-dates the May 11, 2011 effective date of O.C.G.A. § 13-8-50 *et. seq.*, the void and unenforceable covenant at § 7.05(b) of the Agreement is interpreted under the law of Georgia as it stood prior to that new statutory scheme. See <u>Lapolla</u>

Industries, Inc. v. Hess, 325 Ga.App. 256, 263, 750 S.E.2d 467, 474 (2013) (copy attached as Exhibit "C").

The Petition is appropriate for resolution by Declaratory Judgment because there is an actual controversy between the parties (See January 11, 2016 letter from R&C's counsel, Exhibit B, attached); CMGRP/R&C is a party adverse to petitioner, and the legal judgment sought would direct Gallant and APA's future actions, resolving uncertainties and remove a general restraint on trade and permit Gallant to pursue her trade with APA in an industry where she has significant experience and expertise.

**PARTIES, JURISDICTION AND VENUE**

1.

Petitioner Gallant is a citizen and resident of Fulton County, Georgia. She is employed by APA doing public relations work for APA and its clients across the United States from an office in Fulton County, Georgia.

2.

Petitioner APA is a Delaware Corporation with its principal place of business in California. As Petitioner Gallant's current employer, APA is impacted by the restrictions imposed by the Agreement § 7.05(b), has an interest in restriction on Gallant's activities, and standing to petition for declaratory relief. See Lapolla, Exhibit C, 325 Ga.App. at 257-58.

3.

Respondent CMGRP, Inc. is a New York corporation with its headquarters and principal place of business in New York City, New York. CMGRP may be served by delivery of process to its registered agent, Capital Corporate Services, Inc., 3675 Crestwood Parkway, Suite 350, Duluth, Georgia 30092.

4.

This Court has subject matter jurisdiction pursuant to the grant of general jurisdiction Article VI, Section 4, Paragraph 1 of the Georgia Constitution, and under O.C.G.A. § 9-4-2(a).

5.

CMGRP, through its unit R&C, has an office and transacts business at 5909 Peachtree-Dunwoody Road, Atlanta, Georgia 30328, a location in Fulton County, Georgia. The Agreement at issue is to be performed in Fulton County. This Court is therefore a proper venue for this action against CMGRP under O.C.G.A. § 14-2-510(b)(2).

## FACTS AND GROUNDS FOR DECLARATORY RELIEF

6.

Petitioner Gallant was an at-will employee of R&C, a unit of Respondent CMGRP, from October 1, 2008 until her resignation, effective December 4, 2015. During this period she performed duties for CMGRP in Georgia, New York, California, and at other locations around the country, in part performed from CMGRP's office at 5909 Peachtree-Dunwoody Road in Fulton County, Georgia.

7.

As a condition of employment by CMGRP in 2008, Gallant was required by R&C, "a unit of CMGRP," to sign the Employment Agreement, a true copy of which is attached as Exhibit "A" to this petition. Gallant and Respondent's officer and agent, Chief Executive Officer Tom A. Tardio, executed the Agreement on or around October 7, 2008, a date before the effective date of Ga. L. 2011 p. 399, § 5, May 11, 2011. As such, O.C.G.A. § 13-8-50 *et seq.*, does not apply to the Agreement, and Georgia law relating to restrictive covenants in employment contracts as it existed prior to the revisions in O.C.G.A. § 13-8-50 *et. seq.* applies to the Agreement. See Exhibit C, Lapotta, 325 Ga.App. at 262 n.4.

8.

Gallant resigned her employment with Respondent effective December 4, 2015, and thereafter was employed by Petitioner APA. Respondent's attorney's letter to Gallant, a true copy of which is attached hereto as Exhibit "B," indicates Respondent's intent to enforce the provisions of § 7.05(b) of the Agreement, giving rise to this actual controversy between the parties.

9.

The Agreement includes a restriction which, if enforced, would prevent Gallant, for a period of one year following the December 4, 2015 effective date of her resignation from employment with Respondent (*i.e.*, through December 4, 2016), from:

> (b) directly or indirectly (i) solicit or provide, on Employee [Gallant]'s own behalf or on behalf of any other person or entity, publicity, public relations or other services of the type provided by the Company [CPMG] for any person or entity which is a client or prospective client of the Company, or (ii) induce any such client or prospective client to cease to engage the services of Company or to use the services of any entity or person that competes directly with the Company,

> where the identity of such client or perspective client, or the client's or prospective client's need, desire or receptiveness to publicity, public relations, or other services of the type offered by the Company is known by Employee [Gallant] as a part of her employment with the Company or Spotlight Communications. As used herein, (i) "prospective client" means (x) any person or entity to whom, within the one year period immediately preceding the end of the term of employment [i.e., between December 4, 2014 and December 4, 2015], the Company has made a formal presentation (or similar offering of services) for the purpose of being engaged to provide publicity, public or other services and the Company has either been selected to provide such services or the decision with respect thereto is pending or (y) any person or entity for whom the Company has incurred substantial expenses in soliciting or seeking to solicit business within one year prior to the end of the term of employment [i.e., between December 4, 2014 and December 4, 2015]; Exhibit "A," Agreement at § 7.05(b).

10.

Agreement § 7.05(b) is not limited in scope to type and kinds of services Petitioner Gallant provided to Respondent, but defines its restrictions, instead, in terms of any business or services performed by the Company, R&C, a unit of Respondent CMGRP. Similarly, its restriction on Petitioner Gallant is not limited to prohibiting her solicitation of Rogers & Cowan clients with whom she had material contact, but instead seeks to prohibit Gallant from "solicit[ing] or provid[ing] . . . publicity, public relations, or other services of the type provided by the Company for any person or entity which is a client or prospective client of the Company." As such, it is void and unenforceable under Georgia law as it applies to employment agreements executed before May 11, 2011. The existence of the Agreement's § 7.05(b) term, and CMGRP's threat (as set forth in Exhibit "B") of legal action to enforce it, controls or directs Petitioners future actions, severely limiting their business opportunities and constituting a general restraint of trade.

11.

The restriction in Agreement § 7.05(b) is subject to strict scrutiny under Georgia law applicable to employment agreements. The language in § 7.05(b) contains unreasonable restrictions on the kind, character, or scope of work restricted by it and, if enforced, would restrict Petitioner Gallant from performing her trade for Petitioner APA. On its face, it prohibits Gallant from performing any services on APA's behalf for former CMGRP clients, regardless of whether Gallant solicited the clients or performed work for them at CMGRP, and from soliciting CMGRP clients and prospects with whom she had no material contact, with no territorial restriction. As such, it is overbroad in scope and unenforceable on its face. *See* Exhibit C, Lapolla, 325 Ga.App. at 264 (agreement overbroad where not reasonably limited in kind, character or scope of work); Palmer & Cay of Ga., Inc. v. Lockton Companies, 280 Ga. 479, 480(1)(2006)("critical factor is whether the former employee ever served the customer"); W.R. Grace & Co. Mouyal, 262 Ga. 464, 467(2)(1992)(prohibition against doing business with any of company's customers, whether or not a relationship existed with the former employee is overbroad); *see also* Trujillo v. Great Southern, 289 Ga.App. 474, 478 (2008)(applying Mouyal) Daugherty, McKinnon & Luby, P.C. v. Greenwald, Denzik and Davis, P.C., 213 Ga.App. 891, 894(2)(1994)(prohibition against acceptance of work, *e.g.*, "providing", regardless of solicitation, overbroad); Uni-Worth Enterprises v. Wilson, 244 Ga. 636, 639-40) (1979) (restriction overbroad where not limited to customers solicited or contacted by the former employee).

12.

The restrictions on post-employment competition and solicitation in Agreement § 7.05(b) is void and unenforceable under Georgia law, as it applies to strictly scrutinized, employment-related agreements executed before May 11, 2011. See cases cited at 11, *supra*, and Exhibit "C," Lapolla, 325 Ga. App. at 263-64. Georgia law, as it applies to agreements executed before May 11, 2011, does not permit "reformation" or "blue-penciling." That the Agreement contains a "severability" or "reformation" clause (Agreement § 7.06) does not change this principle of Georgia law and public policy. *See* Uni-Worth, 244 Ga. at 639-40 n. 3.

13.

As in Lapolla, 325 Ga.App. at 265(3), Respondent CMGRP's Agreement (Exhibit A) includes a Choice of Law term (§ 8.06) which attempts to impose another state's law (here, New York) on an Agreement which, given Petitioner Gallant's residence and work location in Georgia, governs competition and solicitation in Georgia. See Convergys Corp. v. Keener, 276 Ga. 808 (2003)(attached for convenience as Exhibit "D"). As in Keener and Lapolla, Georgia public policy presents a compelling reason that enforcement of the Choice of Law term would be unreasonable under the circumstances, as "application of the chosen law would be contrary to the public policy [of Georgia] or prejudicial to the interests of this state." *Id.*, 276 Ga. at 810; 325 Ga.App. at 265. *See also* Bunker Hill Int'l. v. Nationsbuilder Ins. Svcs., 309 Ga.App. 503, 508 (2011).

14.

New York does not have a substantial interest in enforcement of the Agreement's terms, which, given Petitioner Gallant's residence and place of business in Atlanta, relate instead to

Georgia's interest in preventing overbroad restraints on trade. If a substantial relationship with New York exists, New York law directly conflicts with Georgia public policy. While New York law might deem the restrictions in Agreement § 7.05(b) overbroad, as not including a reasonable limit on the scope of restricted work, New York law, unlike Georgia law applicable to employment-related agreements executed before May 11, 2011, such as CMGRP's Agreement (Exhibit A), would permit the covenant to be judicially reformed (or "blue-penciled") to narrow the restrictions in § 7.05(b) of the Agreement. See BDO v. Seidman, 93 N.Y.2d 382, 394 (1999); *see also* Lapolla, 325 Ga.App. at 266-67 (noting conflict between Georgia law and Texas law, similar to New York law under BDO). As in Lapolla, this conflict with Georgia public policy applicable to this pre-May 11, 2011 Agreement compels a declaratory judgment that the Choice of Law term (§ 8.05) in the Agreement, like the post-employment restrictions in § 7.05(b) of the Agreement, is unenforceable, and that Georgia law governs. Under Georgia law, the restrictions in § 7.05(b) constitute a void and unenforceable restraint on trade.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

(1) On expiration of twenty days' following service of this Petition on Respondent, pursuant to O.C.G.A. § 9-4-5, enter a Declaratory Judgment for Petitioners on the pleadings, declaring that Agreement § 7.05(b) is void and unenforceable, and that the Agreement's Choice of Law term (§ 8.06), insofar as it applies to § 7.05(b), would be contrary to the public policy of Georgia and prejudicial to the interests of Georgia. Petitioners' proposed Order to this effect is submitted with this Petition.

(2) In the alternative, if not entered on the pleadings, set this matter for a *Rule Nisi* hearing on the first available date after the expiration of twenty days' following service of process on the Respondent. Petitioner requests that the Court, after the *Rule Nisi* hearing, enter an O.C.G.A. 9-11-54 Judgment declaring that Agreement § 7.05(b) (Exhibit A) is void and unenforceable, that the Agreement's Choice of Law term (§ 8.06), insofar as it applies to § 7.05(b), would be contrary to the public policy of Georgia and prejudicial to the interests of Georgia. Petitioners proposed *Rule Nisi* setting this matter for hearing, as an alternative to judgment on the pleadings, is submitted with this Petition.

VERIFICATION OF PETITION ATTACHED.

Respectfully submitted this 25th day of January, 2016.

/s/ Harry J. Winograd
Harry J. Winograd
Ga. Bar. No.770926
Robert E. Rigrish
Ga. Bar No.: 605573
BODKER, RAMSEY, ANDREWS,
WINOGRAD & WILDSTEIN, P.C.

One Securities Centre
3490 Piedmont Road
Suite 1400
Atlanta, Georgia 30305
404.351.1615
404.352.1285 (facsimile)

Attorneys for Petitioners