**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC., | ) | CIVIL ACTION NO. 1:16-cv-00689-CC |
| Plaintiffs, | ) | |
| v. | ) | |
| CMGRP, INC. d/b/a ROGERS & COWAN, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY WITH BRIEF IN SUPPORT**

Defendant CMGRP, Inc. ("CMGRP") respectfully requests that this Court dismiss this action without prejudice in light of a parallel case in the Supreme Court for the State of New York, County of New York, styled *CMGRP, Inc. v. Agency for the Performing Arts, Inc., Maggie Gallant, Sheila Munguia, and Jenna Hudson*, Index No. 651121/2016 (N.Y. Sup. Ct., N.Y. Cnty.) (the "New York Action"). (*See* N.Y. Compl., Ex. 7 to Declaration of Robert Whitman ("Whitman Decl.") [attached hereto as **Exhibit A**].) Alternatively, CMGRP requests that the Court stay this action pending resolution of the New York Action.

## I. INTRODUCTION

Plaintiffs Maggie Gallant and Agency for the Performing Arts, Inc. ("APA") commenced this declaratory judgment action in a race to the courthouse

undertaken solely to preempt litigation by CMGRP after being placed on notice of CMGRP's potential claims. Their lawsuit was the quintessential "anticipatory filing," filed in an effort to gain a perceived procedural advantage of litigating in Georgia, which has virtually no connection to the facts of the case, rather than in New York, where the case belongs.

As discussed below, this case involves an employment agreement between a New York corporation and a former employee who worked primarily in New York, supervised a team of employees in New York, and managed customer relationships in New York. Her actions in violation of her restrictive covenants, in concert with the actions of APA, her new employer, led to the mass exodus of other employees to APA in its New York office. Their behavior has caused and will continue to cause injury to CMGRP that is felt primarily in New York.

In contrast, this dispute's *only* connection to Georgia is happenstance: Gallant relocated from New York City to the Atlanta area in mid-2014, shortly before her resignation from CMGRP, to join her future husband. She continued to commute to New York on a regular basis during those months, maintained her New York residence, and listed New York as her primary business address. Were it not for Gallant's personal choice to move closer to her fiancé, and CMGRP's accommodation of that request, CMGRP would have had no connection to Georgia

whatsoever. Nor would APA, which appears to have no ties to Georgia other than as a result of its hiring of Gallant.

The parties' dispute can and should be heard in New York. Accordingly, CMGRP respectfully requests that the Court decline to exercise jurisdiction over this lawsuit, as is its right under the federal Declaratory Judgment Act, and dismiss this action in deference to the New York Action. In the alternative, CMGRP asks the Court to stay this case until the New York Action is concluded.

## II. FACTUAL BACKGROUND

Gallant worked as a Senior Vice President for Rogers & Cowan ("R&C"), a business unit of CMGRP. (Declaration of Richard Davis ("Davis Decl." [attached hereto as **Exhibit B**] ¶ 5.) R&C is a leading public relations and marketing agency. (Davis Decl. ¶ 3.) Gallant led R&C's TV & Lifestyle unit. (Davis Decl. ¶ 5.) That unit is based in New York City. (Davis Decl. ¶ 5.)

When Gallant began employment with R&C in 2008 in New York, she signed an employment agreement (the "Employment Agreement"), pursuant to which she agreed that, during the term of her employment and for one year thereafter (the "Non-Solicitation Period"), she would not solicit or hire R&C employees, induce them to leave R&C, or interfere with their employment relationship with R&C in any way. (Davis Decl. ¶ 6 .) (*See* Employment Agreement [ECF Dkt. No. 1-3] § 7.05(a).) Gallant also agreed that she would not

solicit or provide services of the type offered by R&C for any other person or entity during the Non-Solicitation Period. (*Id.* § 7.05(b).) Moreover, it requires Gallant to treat as confidential "any information of a confidential nature relating in any way to the business of the Company or its subsidiaries or affiliates or their clients and obtained by her in the course of her employment hereunder." (*Id.* § 7.02.) The Employment Agreement is governed by and construed in accordance with New York law. (*Id.* § 8.06.)

In addition to the Employment Agreement, Gallant signed the Code of Conduct of the Interpublic Group of Companies ("IPG"), the ultimate parent of CMGRP. (Davis Decl. ¶ 7; N.Y. Compl. ¶¶ 24-31.) She first did so on October 17, 2008, and re-affirmed her assent to the Code several times, most recently on February 18, 2015. (*Id.*)

Gallant worked for R&C in its New York City office. (Davis Decl. ¶ 5.) All of the clients that Gallant's unit serviced during her employment, and the potential clients that the unit pitched during that period of time, were located in New York or in locations other than Georgia. (Davis Decl. ¶ 16.)

In 2014, Gallant advised R&C of her intention to relocate to the Atlanta area to be with her boyfriend (and current husband). (Davis Decl. ¶ 8.) As an accommodation, R&C agreed to allow Gallant to work part of the time from Atlanta, provided that she continued to spend a significant amount of time in the

New York City office. (Davis Decl. ¶¶ 9-10.) R&C also agreed to pay for Gallant to take at least two trips to its New York City offices each month. (Davis Decl. ¶ 10.) When necessary for business reasons, she also spent time at other R&C or client locations around the country outside of Georgia, and she listed R&C's New York business address in her e-mail communications. (Davis Decl. ¶¶ 10-12.)

On October 30, 2015, a few months after relocating, Gallant advised CMGRP of her resignation and acceptance of a position with APA, one of R&C's competitors. (Davis Decl. ¶¶ 13, 16.) In the ensuing few weeks, five members of R&C's TV & Lifestyle unit also resigned to join APA. (Davis Decl. ¶¶ 13-15.)

Shortly before her last day, R&C sent Gallant and APA a letter reiterating Gallant's obligations under the Employment Agreement and the Code of Conduct. (Declaration of Robert Whitman ("Whitman Decl.") ¶¶ 2-3.) On January 11, 2016, R&C sent another letter to Gallant and APA outlining specific concerns arising from Gallant's departure. (Whitman Decl. ¶ 4.) The letter stated that the mass exodus of Gallant's team from R&C strongly suggested that Gallant had violated her obligations not to solicit employees to resign, that it appeared that Gallant and APA had solicited R&C clients, and that APA had interfered with Gallant's agreement and otherwise acted improperly. (Whitman Decl. ¶ 4.) R&C demanded that Gallant and APA respond no later than January 15, 2016 and asked them to

implement a litigation hold in anticipation of possible legal action to redress CMGRP's concerns. (*Id.*)

Through counsel, the parties thereafter engaged in discussions to exchange information and explore a potential settlement of their dispute. (Whitman Decl. ¶¶ 4-7.) In the midst of those discussions, and with no notice to CMGRP or its counsel, Plaintiffs filed the Georgia state court action (the "Georgia Action") on January 27, 2016. [Compl., ECF Dkt. No. 1-1]. Plaintiffs' sole claim is a request for a declaratory judgment invalidating Gallant's non-solicitation obligations under her Employment Agreement. CMGRP was not served in the Georgia Action until March 4, 2016, the day after it commenced the New York Action, and, to CMGRP's knowledge, service was not attempted before then. (Whitman Decl. ¶¶ 11, 13.)

On March 3, 2016, CMGRP removed the Georgia Action to this Court. [Notice Removal, ECF Dkt. No. 1]. On the same day, it commenced the New York Action. (*See* N.Y. Compl.) The defendants in the New York Action are APA, Gallant, and Sheila Munguia and Jenna Hudson, both former New York-based CMGRP employees who worked on Gallant's team at R&C and left to join her at APA. (*Id.* at ¶¶ 6-10.)

## III. ARGUMENT AND CITATION TO AUTHORITIES

The Court should decline to exercise its discretionary jurisdiction over this matter because the New York Action will resolve all the claims in this dispute, not only among the named parties in the Georgia Action but also among the additional parties to the New York Action, neither of whom would be subject to personal jurisdiction in Georgia. It would be "uneconomical as well as vexatious" for this Court "to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

### A. Standard of Review

Upon its removal to this Court, Plaintiffs' state-law claim for declaratory relief became a claim under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. *See, e.g.*, *Krauser v. BioHorizons, Inc.*, 902 F. Supp. 2d 1337, 1346 n.6 (S.D. Fla. 2012) ("When a declaratory judgment action has been removed to federal court, it is treated as though it had been filed under the federal declaratory judgment act. Declaratory judgment acts are procedural in nature and, thus under the *Erie* doctrine, this Court must apply federal procedural law.") (citations and internal quotation marks omitted).

District Courts have no obligation to assume jurisdiction over declaratory judgment actions. *See* 28 U.S.C. § 2201(a) (court "*may* declare the rights and

other legal relations of any interested party seeking such declaration") (emphasis added). The Declaratory Judgment Act confers a "unique and substantial discretion" to the District Courts, not "an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283, 289–90 (1995). It "gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).

In *Ameritas*, the Eleventh Circuit addressed the propriety of a federal court's assumption of jurisdiction over a declaratory judgment action where a parallel state-court proceeding raised the same or similar issues. It identified nine non-exhaustive factors that inform the District Court's assessment of state and federal interests in the exercise of its discretion. Those factors are:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 1331.

The threshold inquiry is whether the suits are parallel, meaning that "substantially the same parties litigate substantially the same issues in different forums." *Pa. Nat'l Mut. Cas. Ins. Co. v. King*, 2012 WL 280656, at *4 (S.D. Ala. 2012); *see also Ameritas*, 411 F.3d at 1331. Here, the two actions are parallel because they involve disputes about Gallant's compliance with the restrictive covenants in her Employment Agreement, the validity of those restrictions, and APA's alleged interference with those restrictions. (*Compare* Compl. ¶¶ 7-11 *with* N.Y. Compl. ¶¶ 67-73.) Although the NY Action is broader than the Georgia Action (as discussed below), the partial overlap in claims and parties is sufficient to trigger application of the *Ameritas* factors.

### B. This Court Should Decline Jurisdiction Over Plaintiffs' Declaratory Judgment Action

#### *1. New York has a substantial interest in having the issues raised in this action decided in its courts*

This case presents a dispute between two New York companies, the former employee of one and a new employee of the other, over acts that occurred in New York in alleged violation of a contract governed by New York law. (Davis Decl. ¶¶ 5-17.) For nearly her entire tenure with R&C, Gallant worked in New York and supervised a team based in New York. (Davis Decl. ¶¶ 5, 13-16.) Her violations of the Employment Agreement, and her new employer's interference with that agreement, occurred in New York and had their primary effects in New York. (Davis Decl. ¶¶ 13-16.) The Employment Agreement lists a New York address for purposes of formal notice to Gallant, and she signed and faxed the agreement in New York. (Davis Decl. ¶ 6.)

As such, New York has a very strong interest in having the issues in this dispute resolved in its courts. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (contract dispute governed by state law and signed in that state should be heard by that state's court system); *Gen. Fid. Ins. Co. v. Garrett*, 998 F. Supp. 2d 1312, 1315 (M.D. Ala. 2014) (state had a "strong interest" in deciding issues when litigants sought interpretation of contract governed by state law that was issued in that state); *Westchester Surplus Lines Ins. Co. v. Romar*

*House Ass'n, Inc.*, 2008 WL 5412937, at *4 (S.D. Ala. Dec. 29, 2008) (case "implicating no substantive federal law" should be dismissed in favor of state proceedings); *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1242 (S.D. Ala. 2006) (lawsuits raising "exclusively state law issues" and implicating "exclusively state law public policies" support decline of federal jurisdiction). And while Plaintiffs and CMGRP are citizens of different states, it would be "extreme hyperbole" to say that diversity jurisdiction alone creates an "overriding federal interest." *Westchester Surplus Lines Ins. Co.*, 2008 WL 5412937, at *4.[1]

In contrast, this matter has only the most tenuous connection to Georgia, in that Gallant relocated to the Atlanta area shortly before her resignation as an accommodation to be with her future husband. (Davis Decl. ¶¶ 8-9.) Even after that relocation, she continued to work in New York, listed CMGRP's New York City office as her primary work address, and supervised a team of employees centered in New York. (Davis Decl. ¶¶ 10-15.) She also maintained her New York City residence. (Whitman Decl. ¶ 15.) Moreover, APA has no apparent connection to Georgia other than through Gallant's place of residence; it did not even register to do business in Georgia until January 15, 2016, the same day it responded to the January 11 pre-litigation letter from R&C's counsel, an act almost

[1] Whether the court in the New York Action applies New York or Georgia law to the parties' dispute is irrelevant. *See, e.g.*, *Benefield v. Pfizer, Inc.*, 103 F. Supp. 3d 449, 457-58 (S.D.N.Y. 2015) (applying Georgia law in a New York case).

certainly orchestrated solely in anticipation of the impending commencement of the Georgia Action. (Whitman Decl. ¶ 12.) The two additional defendants in the New York Action, Munguia and Hudson, work in New York City and have no pertinent connections to Georgia whatsoever. (Davis Decl. ¶ 15.)

### *2. The federal suit would not settle the controversy*

This matter arises from the mass departure of employees in R&C's TV & Lifestyle unit for APA and the loss of actual and potential clients as a result of that departure. A full airing and resolution of that dispute requires a broader inquiry than what this Court can hear. The New York Action names two defendants not included in the Georgia Action: Sheila Munguia, a citizen of New York, and Jenna Hudson, a citizen of New Jersey. Both worked for R&C in New York City and currently work in APA's New York City office. (N.Y. Compl. ¶¶ 53-54; Davis Decl.¶ 15.) Munguia and Hudson were lieutenants of Gallant at R&C who are alleged to have been actively involved in – and personally liable for – the events surrounding APA's acquisition of the bulk of R&C's TV & Lifestyle business. (N.Y. Compl. ¶¶ 67-113.) Neither appears subject to personal jurisdiction in Georgia.

Moreover, the New York Action involves an agreement separate from the Employment Agreement at issue in the Georgia Action: the IPG Code of Conduct. (N.Y. Compl. ¶¶ 24-31.) The Code contains additional post-employment

restrictions that were agreed to by Gallant, Munguia and Hudson, and interfered with by APA. (*Id.*)

CMGRP's claims in the New York Action are also broader in scope. They concern not only breaches of contract by the individual defendants but also common law claims under New York law against the individuals and/or APA for breach of the duty of loyalty, tortious interference, unfair competition, and unjust enrichment. (N.Y. Compl. ¶¶ 98-124.)

Thus, regardless of the outcome of the instant case, CMGRP would still have claims against Gallant for violation of the Code of Conduct, against Gallant and APA for common law torts arising from their alleged conduct, and against Munguia and Hudson under similar legal theories. That means, in turn, that this Court's assumption of jurisdiction over Plaintiffs' declaratory judgment claim in the Georgia Action "would result in piecemeal litigation, which goes to the heart of the second *Ameritas* guidepost." *Westchester Surplus Lines*, 2008 WL 5412937, at *5.

The inability of the federal action to offer complete relief "triggers application of the principle that '[g]ratuitous interference with the orderly and *comprehensive* disposition of a state court litigation should be avoided.'" *Argonaut Great Cent. Ins. Co.*, 2015 WL 736156, at *3 (quoting *Brillhart*, 316 U.S. at 495 (emphasis added)); *see also Great Lakes Reinsurance (UK) PLC v.*

*TLU Ltd*., 298 F. App'x 813, 815 (11th Cir. 2008) (affirming district court's refusal to assert jurisdiction where state court action encompassed the entire controversy and federal action would "improperly interfere" with the state court action).

***3. The federal declaratory action would not serve a useful purpose in clarifying the parties' legal relations***

As discussed, Plaintiffs' declaratory judgment action would be redundant of, but less comprehensive than, the New York Action. It would thus be a duplicative lawsuit that would cause a needless expense of the parties' time and resources.

***4. Plaintiffs filed this action solely for the purpose of "procedural fencing"***

This lawsuit is a race-to-the-courthouse placeholder that Plaintiffs filed solely "in anticipation of the other pending proceeding." *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). They chose to proceed in Georgia, despite this State's minimal nexus to the dispute, only so they could claim, in response to a lawsuit by CMGRP in the event the parties' settlement discussions were unsuccessful, that their case was the "first filed" and should take priority. They did not truly intend to prosecute their claim. Despite filing the Georgia Action on January 27, 2016, Plaintiffs did not serve it or, to CMGRP's knowledge, make any attempt to do so, until March 4, the day after CMGRP commenced the New York Action. (Whitman Decl. ¶ 13.) (CMGRP is a corporation and could have easily been served by any number of methods had

Plaintiffs wanted to do so.) Nor did Plaintiffs' counsel ever mention the filing to CMGRP's counsel during their numerous conversations thereafter. (*Id.* ¶ 11.)

Where an earlier lawsuit is so plainly "anticipatory" in nature, the federal court should decline to exercise its limited jurisdiction. *See Chaban Wellness, LLC v. Sundesa, LLC*, 2015 WL 4538804, at *2 (S.D. Fla. July 27, 2015) ("bad faith negotiations, an anticipatory suit, and forum shopping" are "compelling circumstances" that justify declining jurisdiction). For example, in *Soroka v. Lee Techs. Servs., Inc.*, 2006 WL 1734277, at *4-5 (N.D. Ga. June 19, 2006), Judge Thrash found that a former employee was "motivated by forum-shopping concerns" when he filed a declaratory judgment action eleven days after receiving a cease and desist letter from his former employer. The anticipatory nature of his lawsuit was one of the factors leading the court to decline to exercise jurisdiction over his claims. *Id.* Similarly, in *Spanx v. Times Three Clothiers, LLC*, 2013 WL 5636684, at *4-5 (N.D. Ga. Oct. 15, 2013), Judge Duffey held that a declaratory judgment action filed before receiving a response to a settlement proposal was a "strategic first pleading" that received no deference. *See also Chaban Wellness, LLC*, 2015 WL 4538804, at *2 (holding that equitable considerations favored decline of jurisdiction "given the timing of Plaintiff's filings in relation to the on-going settlement negotiations").

Plaintiffs' inaction since filing the Georgia Action further confirms the anticipatory nature of the suit. *See Vital Pharms., Inc. v. Cytosport, Inc.*, 2009 WL 302277, at *4 (S.D. Fla. Feb. 9, 2009) (noting that one consideration in decision to exercise jurisdiction is whether party evaded service or delayed service to obtain a tactical advantage).[2]

Plaintiffs may respond to these arguments by invoking the "first-filed" rule and claiming that their suit takes priority over the later-filed New York Action. That rule plays no role here; it applies only to competing *federal* cases, not where there are cases pending in state and federal courts. *See Manuel v. Convergys Corp.*, 430 F.3d 1132 1135 (11th Cir. 2005) (first-filed rule applies "[w]here two actions involving overlapping issues and parties are pending in *two federal courts*") (emphasis added); *Triple S Refining Corp. v. Mount Canaan Full Gospel Church*, 254 F. App'x 762, 763 (11th Cir. 2007) (affirming district court's decision to decline jurisdiction in favor of later-filed state action) (citing *Ameritas*, 411 F.3d at 1331); *Mt. Hawley Ins. Co. v. Sarasota Residences, LLC*, 714 F. Supp. 2d 1176, 1181 (M.D. Fla. 2010) ("[The first-filed] rule applies to competing claims filed in separate federal courts, not competing federal and state court actions.").

[2] Counsel for Defendant discovered this suit not because Plaintiffs notified Defendant but, rather, because this suit showed up in a pre-litigation background check. (Whitman Decl. ¶ 12.)

### 5. *The federal declaratory action would provide an inferior remedy, would present difficulties managing discovery, and would involve solely state court issues*

The remaining *Ameritas* factors either favor dismissal or are neutral. For the reasons discussed above, this case would provide an inferior remedy to the New York Action (factor 6) because of its narrower scope, fewer claims and smaller number of parties. In this case, Plaintiffs seek only a declaration that § 7.05(b) of the Employment Agreement is void and unenforceable under Georgia law. [Compl. ¶ 8, ECF No. 1-1) In the New York Action, CMGRP seeks a range of remedies, including compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees (pursuant to the fee-shifting provisions of the Employment Agreement and Code of Conduct). The sole argument Plaintiffs are advancing in this action, to the effect that the Employment Agreement is not enforceable, will be easily subsumed within the New York Action by virtue of Plaintiffs' defenses to CMGRP's claims therein.

New York is also better forum for purposes of discovery (factor 8). CMGRP and all of the defendants in the New York Action live, work, or otherwise have a substantial presence in New York, which will facilitate depositions and other discovery obligations. (Davis Decl. ¶ 15.) Two of the individual defendants in the New York Action, Munguia and Hudson, are residents of New York and New Jersey, respectively, and would not be subject to personal jurisdiction in this

Court. (*Id.*) In contrast, Gallant is the only party with any connection to Georgia whatsoever. APA appears to have no connection other than by virtue of Gallant's residence, and its registration to do business in Georgia occurred in anticipation of this litigation. (Whitman Decl. ¶ 12.) To the extent R&C ever had any connection to Georgia, it was solely because of Gallant's recent relocation; now that she has resigned, it has no Georgia presence at all. (Davis Decl. ¶¶ 17-18.)

None of the potential non-party witnesses is located in Georgia either. In the event that the parties' dispute requires discovery of current or former clients of R&C or APA, those clients are located either in New York or somewhere other than Georgia. (Davis Decl. ¶¶ 16-18.)

Finally, where a case presents issues only of state and not federal law (factor 9), that factor weighs in favor of the federal court declining jurisdiction. *See Canal Ins. Co. v. Morgan*, 2007 WL 174387, at *4 (S.D. Ala. Jan. 19, 2007) ("[The] Complaint raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law.").

**C. In the Alternative, This Court Should Stay This Action Pending Resolution of the New York Action**

Because the *Ameritas* factors favor declining jurisdiction over a fragment of the parties' dispute in favor of the comprehensive New York Action, this Court should dismiss this suit without prejudice. Plaintiffs would suffer no prejudice

from such a result. In the alternative, however, this Court should stay this case for the reasons discussed above. *See Phila. Indem. Ins. Co. v. Hamic*, 2012 WL 3065379, at *2 (M.D. Fla. July 27, 2012) (opting to stay, rather than dismiss, a declaratory judgment action pending resolution of a pending, underlying state court action).

## IV. CONCLUSION

Plaintiffs filed an anticipatory action for partial relief. The New York Action presents the parties with a far better opportunity for a complete resolution of their disputes. Therefore, CMGRP respectfully requests that the Court dismiss this case without prejudice so it may be fully and conclusively resolved by the New York Action or, in the alternative, stay this action pending resolution of the New York Action.

Respectfully submitted,

CMGRP, INC.

By: */s/ Daniel P. Hart*

Daniel P. Hart
Georgia Bar No. 141679
dhart@seyfarth.com
Alex Meier
Georgia Bar No. 282350
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA 30309-3958
Telephone: (404) 885-1500

Facsimile: (404) 892-7056

*Attorneys for Defendant*

Date: March 8, 2016

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C

I certify that this Motion has been prepared in Times New Roman font at 14 point size, in compliance with Local Rule 5.1C.

*/s/ Daniel P. Hart*
Counsel for Defendant
Georgia Bar No. 141679

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC., | ) | CIVIL ACTION NO. 1:16-cv-00689-CC |
| Plaintiffs, | ) | |
| v. | ) | |
| CMGRP, INC. d/b/a ROGERS & COWAN, | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I certify that on March 8, 2016, I served the foregoing **DEFENDANT CMGRP, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY WITH BRIEF IN SUPPORT** on the following counsel of record via CM/ECF filing:

Harry J. Winograd
Bodker, Ramsey, Andrews, Winograd & Wildstein, P.C.
One Securities Centre
3490 Piedmont Road
Suite 1400
Atlanta, Georgia 30305

By: *<u>/s/ Daniel P. Hart</u>*
Daniel P. Hart
Georgia Bar No. 141679