UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC. | ) | |
| Petitioners, | ) | |
| v. | ) | CIVIL ACTION NUMBER: 1:16-cv-00689-CC |
| CMGRP, INC. d/b/a ROGERS & COWAN, | ) | |
| Respondent. | ) | |

**PETITIONERS' MEMORANDUM IN OPPOSITION**
**<u>TO RESPONDENTS' MOTION TO DISMISS OR STAY</u>**

Respondent CMGRP, Inc. ("CMGRP") has moved (Doc. No. 4) to dismiss or stay the Petitioners' Declaratory Judgment Petition which seeks to enforce rights under Georgia law and public policy on behalf of a Georgia native and resident, Maggie Gallant, as she is employed in Georgia by Agency for the Performing Arts, Inc. ("APA"). CMGRP's Motion is essentially a reprise of *Manuel v. Convergys Corporation*, N.D.Ga. C.A. No. 1:04-1279-MHS (Order, October 18, 2004)(attached at Doc. No. 12-1 as Ex. A), *aff'd*, 430 F.3d 1132 (11th Cir. 2005). CMGRP's Motion to Dismiss or Stay must be denied, under the "first filed" rule, which, consistent with Fed.R.Civ.P. Rules 1 and 57, 28 U.S.C. § 2201, Supreme

Court and Eleventh Circuit authority, and Georgia law, directs that this Court (assuming it has subject matter jurisdiction and does not remand this case to the Fulton County Superior Court) decide the substantially dispositive issue in this case. The issue is that the 2008 restrictive covenants imposed on Petitioner Gallant in an Employment Agreement and Code of Conduct are unenforceable under Georgia law, against Petitioner Maggie Gallant, a Georgia resident employed in Georgia.

**Facts Material to the Issue**

Maggie Gallant was employed by CMGRP, (through a CMGRP entity Rogers & Cowan), from October 2008 until December 4, 2015. From 2014 until she left CMGRP Ms. Gallant, a Georgia native, resided in Georgia, where she worked from a CMGRP office on Peachtree-Dunwoody Road in Atlanta, while traveling regularly on CMGRP's behalf to New York, Los Angeles, California, and other locations. Doc. No. 1-1, Verified Petition at ¶ 1, 5; Doc. No. 1, Notice of Removal; Doc. No. 12-2, Ex. B, Gallant Dec. at ¶ 5. On October 30, 2015, Ms. Gallant informed CMGRP that she would resign her employment effective December 4, 2015, near the date of her wedding, and that she would start work with APA after her honeymoon. Doc. 4-1, Whitman Dec. at its Ex. 6; Doc. No. 12-2, Gallant Dec. at ¶ 8.

On December 2, 2015, CMGRP's counsel sent Ms. Gallant and APA a letter advising that "Rogers & Cowan fully intends to enforce all its rights . . . against Ms. Gallant under the Employment Agreement . . ." Doc. No. 4-1 at its Ex. 1. Ms. Gallant and APA did not "race to the courthouse" (CMGRP's Motion, Doc. No. 4, at p. 1) on receipt of this threat. Six weeks later, in letters to APA and Ms. Gallant (at her Alpharetta, Georgia address), CMGRP's counsel described the December 2, 2015 letter as "explicitly contemplat[ing] that R&C would assert legal claims against [Gallant] arising out of these circumstances" and advised APA that CMGRP's counsel had "been instructed to take such action as may be necessary and proper to enforce and protect our client's rights and remedies ..." Doc. No. 4-1 at its Ex.s 2, 3 (January 11, 2016 letters, at pgs. 12 to 17 of 54). Instead of "racing to the courthouse," Petitioners continued efforts to resolve the parties' dispute amicably without resort to litigation. Id. Doc. No. 4-1 at its Ex. 5 (January 25, 2016 e-mail between counsel); see also Doc. No. 7-2, Winograd Dec. at ¶ 3.

On January 27, 2016, nearly two months after CMGRP's letter "explicitly contemplat[ing] that [CMGRP] would assert claims," Gallant and APA filed their Verified Petition in Fulton County Superior Court, protecting their right to have covenants constraining her right to pursue her trade as a Georgia resident

employed in Georgia decided under the law of Georgia. See Doc. No. 1-1; Doc. No. 7-2, Winograd Dec. at ¶ 3; Doc. No. 12-2, Gallant Dec. at ¶ 5-7. Rather than serve the Petition on CMGRP, Petitioners continued their efforts to reach an amicable resolution. See Doc. No. 4-1 at its Ex. 6; Doc. No. 4 at p. 6; Doc. No. 7-2, Winograd Dec. at ¶ 3.

CMGRP apparently learned of the Fulton County Petition (Doc. No. 1-1) sometime before March 3, 2016, when it filed its Notice of Removal (Doc. No. 1), but its counsel did not advise Petitioners of this discovery. CMGRP simultaneously filed a Complaint in New York (Doc. No. 4-1 at its Ex. 7) asserting claims based on the restrictive covenants, as well as unrelated tort claims and claims against two additional parties.

## <u>Argument</u>

### A. <u>CMGRP's Motion Should Be Denied Under the First-Filed Rule</u>.

The court where a case is first filed should be the one to decide the case. This chain of events here is substantially similar to that in *Manuel* and its precursor, *Keener v. Convergys Corp*, 205 F.Supp.2d 1374 (S.D. Ga. 2002)(*Keener I*), *aff'd* 342 F.3d 1264 (11th Cir. 2003)("*Keener III*"), with some factual differences putting Ms. Gallant in an even more favorable equitable posture. Mr. Manuel worked for Convergys out of its Jacksonville, Florida office from 1999

until April, 2004, when he resigned, then started work for Convergys' competitor, Mellon Financial, in Atlanta. Doc. No. 12-1, Exhibit A, *Manuel* Order at p. 2-3. Manuel filed his declaratory judgment action in Gwinnett County on April 20, 2004, apparently in apprehension of Convergys suing him. Id. at 6. On May 10, 2004, Convergys removed the Gwinnett action to this Court and simultaneously sued Manuel in Hamilton County, Ohio, Convergys' "home court" and the venue and law chosen in Convergys' June 2003 Non-Disclosure and Non-Competition Agreement. Id. at 2. Manuel removed the later-filed Ohio state court action to the Southern District of Ohio, which stayed proceedings in that later-filed action. Id. at 3.

Unlike Ms. Gallant, who told her employer that she was going to work for APA, Convergys claimed that Manuel "intentionally misled them" to assure that his suit was filed first. Id. at 9; *see also Manuel*, 430 F.3d at 1134. Unlike Ms. Gallant, who did not "race to courthouse" but waited nearly two months after CMGRP's December 2, 2015 notice and attempted to amicably resolve the parties' dispute, Manuel accepted Mellon's offer on April 5, 2004; resigned from Convergys April 8th, agreeing to stay on until mid-month; then told Convergys he was not going to work for a competitor and that he had not accepted a job with another company. Manuel did not establish residency in Georgia until April 9,

2004, when he signed a lease and obtained a Georgia driver's license. *Manuel*, 430 F.3d at 1134. Manuel then filed his declaratory judgment action on April 20, 2004. Id.; Doc. No. 12-1, *Manuel* Order at 3.

Convergys made the same arguments CMGRP makes here, and this Court should reject those arguments for the same reasons they were rejected in *Manuel*. Doc. No. 12-1, Ex. A, *Manuel* Order at 4; *Manuel*, 430 F.3d at 1134-36; see also N.D.Ga. Civil Action No. 1:04-cv-1279-MHS at Docket No. 2 (Convergys' Motion to Dismiss or Stay). Judge Shoob rejected those arguments, finding an absence of "compelling circumstances" to not follow the "first-filed" rule, and had that judgment affirmed on appeal. Doc. No. 12-1, Ex. A., *Manuel* Order at 5-10; *Manuel*, 430 F.3d at 1135-38.

The same principles should guide this Court in denying CMGRP's Motion (if the Court has not already remanded this case for lack of subject matter jurisdiction). "In the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." Doc. No. 12-1, Exhibit A, Manuel Order at 5 (citation omitted). *See also Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013)(affirming Judge Thrash's application of the "first filed" rule to enjoin parties from pursuing claims in later-filed suit in California). If anything, CMGRP offers less "compelling

circumstances" than Convergys to avoid the "first filed" rule. *Manuel*, 430 F.3d at 1135 (citation omitted). Here, even more so than in *Manuel*, there is no basis for characterizing Petitioner's January 27, 2016 Petition (Doc. No. 1-1) as an improper anticipatory filing. CMGRP's December 2, 2015 letter did not give Gallant and APA "specific, concrete indications that suit was imminent . . . notice of a filing date and/or specific forum for the filing." Exhibit A, *Manuel* Order at 7 (citations omitted). As Judge Shoob noted, and the Eleventh Circuit agreed, reasonable apprehension sufficient to warrant a declaratory judgment petition is not the equivalent of an "imminent threat" supporting a conclusion that the first-filed action was "anticipatory:" "Otherwise, each time a party sought declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable [to it] could always prevail under the anticipatory filing exception." Doc. No. 12-1, *Manuel* Order at 7; *Manuel*, 430 F.3d at 1137 (citation omitted). The facts here offer no basis for claiming a "race to the courthouse" or anticipatory filing: nearly two months passed after CMGRP's December 2, 2015 letter (and Gallant's last day of work on December 4, 2015) and filing her petition on January 27, 2016 (Doc. No. 1-1).

As in *Manuel*, which rejected the same argument, Ms. Gallant and APA's January 27th Petition was not improper "forum shopping." Judge Shoob, rejecting

Convergys' reference to *Ven-Fuel, Inc. v. Dept. of Treasury*, 673 F.2d 1194 (11th Cir. 1982)(cited by CMGRP at Doc. No. 4, p. 14), Doc. No. 12-1, Exhibit A at 7, went on to note that "It is undisputed that [Manuel] resides and works in Georgia . . . good and ample reasons for [plaintiff] to file in [Georgia], apart from any legal advantage he might gain. . . a certain degree of forum shopping is sanctioned in our system . . . an attorney is expected to select the jurisdiction where the applicable rules of law are more favorable." Id., *Manuel* Order at 8-9. The Eleventh Circuit agreed. *Manuel*, 430 F.3d at 1137.

Respondent's Motion (Doc. No. 4 at 16) ignores the clear application of *Manuel* to its Motion, other than to misread *dicta* from it (430 F.3d at 1135) and inapposite insurance coverage cases to suggest that the "first filed" rule applies only to claims in competing federal courts. This is simply not true. On the "first filed" rule, *Manuel*, Doc. No. 12-1 at 5, and 430 F.3d at 1136, relies on *Merrill Lynch Pierce Feener & Smith Inc. v. Hayden*, 675 F.2d 1169, 1174 (11th Cir. 1982), which in turn relied on *Mann Manuf., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 n. 2 (5th Cir. 1971), which cited *Rickey Land & Cattle Co. v. Wood*, 218 U.S. 258, 31 S.Ct. 11 (1910), for the "first filed" proposition. In *Rickey*, 218 U.S. at 262, Justice Holmes applied the "first filed" rule to give precedence to a federal equitable claim brought in the district court for Arizona over a later-filed

California state court action in a water rights dispute. "We are of the opinion . . . the court first seised should proceed to determination without interference, on the principles now well settled as between the courts of the United States and of the states." Id., 218 U.S. at 262 (citations omitted). Under *Manuel* and *Rickey*, the "first filed" rule governs and CMGRP's Motion to Dismiss or Stay (Doc. No. 4) must be denied, as CMGRP has not shown "compelling circumstances" to avoid that rule.

**B. CMGRP's later-filed New York Suit is not "Parallel."**

CMGRP's later-filed New York action differs significantly from Gallant and APA's declaratory judgment action here because CMGRP's New York action relies on New York law rather than the Georgia law applicable to the Declaratory Judgment Petition at issue here, i.e., Maggie Gallant's right to current employment in Georgia with APA. Compare Doc. No. 1-1, Gallant Verified Petition, and Doc. No. 4-1 at its Ex. 7 (CMGRP's New York Complaint). First and foremost, CMGRP's New York Complaint claims and relies upon the provision in the Gallant Employment Agreement (Doc. No. 1-3 at § 8.06) providing that "it shall be governed and construed in accordance with the laws of the State of New York."

Doc. No. 4-1 at its Ex. 7, New York Complaint at ¶ 23.[1] Simply put, CMGRP's restrictive covenants under New York law are not substantially the same issue as consideration of those covenants *under Georgia law*, the substantive issue in this declaratory judgment action. As the most recent Alabama insurance coverage case explaining the *Wilton/Brillhart/Ameritas* abstention doctrine notes, in denying a motion to dismiss or stay a declaratory judgment petition filed *after* a first-filed state court action, that the Eleventh Circuit instructs that "A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the *same state law issues*." *Employers Mut. Cas. Co. v. Kenny Hayes Custom Homes, LLC*, 101 F.Supp.3d 1186, 1188-89 (S.D. Ala. 2015), quoting *Fed. Res. Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000)(emphasis supplied). *Thomas*, in turn, 220 F.3d at 1247, relies on *Michigan Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 742 (11th Cir. 1982), which reversed as an abuse of discretion dismissal of a federal declaratory judgment complaint where there was "no pending state proceeding in

---

[1] This means, contrary to CMGRP's misleading footnote aside (Doc. No. 4 at its Ex. 7, p. 11, n. 1), that a New York court will not apply Georgia law to Gallant's employment activities in Georgia on behalf of APA, but instead would apply New York restrictive covenant law to Ms. Gallant's work for APA in Georgia, one subject of its claims. See Doc. No. 4, at its Ex. 7, New York Complaint at ¶¶ 19 – 21, Count I, ¶¶ 67-73. See *Ministers and Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 468, 45 N.E.3d 417 (N.Y. App. 2015).

which *the issues in this case* will necessarily be resolved." (emphasis supplied). CMGRP's New York action will most certainly not resolve Petitioners' issues in this action, as the New York court, under *Snow*, 26 N.Y. 3d at 468, will not apply Georgia law to the Employment Agreement restrictions (Doc. No. 1-3 at § 7.02, 7.05) CMGRP wants applied to Gallant's Georgia employment.

As one Alabama insurance coverage case CMGRP cites (Doc. 4 at 9) notes, "considerable precedent supports the notion that a *Wilton/Brillhart* analysis [i.e., *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), on which CMGRP relies] does not even apply in the absence of parallel litigation." *Penn. Nat. Mut. Ins. Co. v. King*, 2012 WL 280656, *4 (S.D. Ala. 2012)(citations omitted). "[S]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." Id.

CMGRP's New York Complaint also asserts against Ms. Gallant factually and legally disparate claims that, while employed by CMGRP's Rogers and Cowan business unit, she breached a New York tort law duty of loyalty. Doc. No. 4 at its Ex. 7 at ¶ 2, 57, 59; Count VI, ¶¶ 98-102; see, for example, *Western Elec. Co. v. Brenn*er, 360 N.E.2d 1091 (Ct. App. N.Y. 1977). While this claim is sufficiently related to Ms. Gallant's declaratory judgment petition claims to make it a compulsory counterclaim under Fed.R.Civ.P 13(a), or, if this action is remanded,

O.C.G.A. § 9-11-13(a), it differs substantially from Ms. Gallant's declaratory judgment action efforts to defeat application of CMGRP's overbroad restrictive covenants to a Georgia citizen under Georgia law.[2] The two actions are not "parallel."

### C. *Ameritas* and its Insurance Coverage Progeny Provide No Relevant Guidance In this Restrictive Covenant Dispute

CMGRP's reliance on an insurance coverage case, *Ameritas*, 411 F.3d at 1328, and applications of it in the same context (primarily in Alabama; see Doc. No. 4 at 10-11) is a diversion, as it ignores the true threshold question in employment restrictive covenant cases like this and *Manuel*: "whether the application of [a foreign state's] law in this context violates Georgia's public policy." *Boone v. Corestaff*, 805 F.Supp. 2d 1362, 1368-69 (N.D. Ga. 2011).

The "guideposts" offered in *Ameritas*, 411 F.3d at 1331, must be read in their factual context. When Mr. Roach died of an apparent suicide in Alabama and his wife filed a life insurance claim, the insurer (Ameritas) sought Federal declaratory relief in an Alabama federal court as to its obligations under a suicide clause. Mrs. Roach followed with an Alabama state court claim seeking insurance

[2] CMGRP's New York Complaint also adds claims against two parties (Munguia and Hudson, not Georgia residents) not parties and not at issue in Gallant's declaratory judgment petition. Doc. No. 4-1 at its Exhibit 7.

benefits. In this context, presenting no conflict between the state law that would be applied by the federal and state courts to parallel litigation, the Eleventh Circuit offered "guideposts" and found that the Alabama district court's decision to dismiss the first-filed insurance coverage declaratory judgment action in favor of an action in the same state, applying the same state law, was not an abuse of discretion. Id., at 1332. This is the usual situation where *Ameritas* is applied. *See Employers Mutual*, 101 F.Supp.2d at 1186; *Lexington Ins. Co. v. Rolison*, 434 F.Supp.2d 1228 (S.D. Ala. 2006).

In contrast, employment restrictive covenant cases, as here and in *Manuel*, 430 F.3d at 1138, *Boone*, 805 F.Supp.2d at 1370, *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1241-42 (11th Cir. 2005), and the like,[3] where a foreign employer attempts to impose a foreign state's law on Georgia employment, the *Ameritas* factors do not apply. For good reason: as Judge Story notes in *Boone*, the threshold issue is not whether a parallel action is pending *in* Georgia, applying the

---

[3] *See Keener v. Convergys Corp.*, 205 F.Supp.2d 1274 (S.D. Ga. 2002)("*Kenner I*"); on certified question, 276 Ga. 808 (2003)("*Keener II*"), 342 F.3d 1264 (11th Cir. 2003)("*Keener III*"); *Conable v. U.S. Foodservice, Inc.*, 2006 WL 149052 (N.D.Ga. 1:05-c-02887-MHS (January 18, 2006), *Wilson v. Benyon Sports Surfaces, Inc.*, 2011 WL 6014666 (N.D. Ga. 1:11-cv-2002-RWS)(December 1, 2011); *Cibula v. PSS World Medical, Inc.*, 2013 WL 5555445 (N.D. Ga. 1:13cv-1122-WSD)(October 8, 2013); *Bell v. PSS World Medical, Inc.*, 2013 WL 5555480 (N.D. Ga. 1:13-cv-1399-WSD)(October 8, 2013); *D and R Party, LLC v. Party Land, Inc.*, 406 F.Supp.2d 1382 (N.D. Ga. 2005).

same state law as the declaratory judgment sought in an insurance coverage dispute (*i.e.*, the "procedural fencing" of concern in insurance coverage cases, *Ameritas*, 411 F.3d at 1331 factor (4)), but whether an action in another state will apply law the conflicts with Georgia public policy governing employment in Georgia. *Boone*, 805 F.Supp.2d at 1368-69; see also *LaPolla Industries v. Hess*, 325 Ga. App. 256, 265 (2013).

CMGRP seeks to ignore this elephant in the room, avoiding the choice of New York law term in its Employment Agreement with Ms. Gallant (Doc. 1-3 at § 8.06), Motion, Doc. No. 4, at p. 11, n. 1, in claiming "whether the New York court "applies New York or Georgia law . . . is irrelevant"). In fact, New York law, when presented a contract choice of law term, will ignore the "center of gravity" test described in *Benefield v. Pfizer, Inc.*, 103 F.Supp. 3d 449, 457 (S.D.NY. 2015), which CMGRP cites. New York will enforce the contract choice of law term, regardless of whether the employee subjected to the restriction lives and works in a state (like Georgia or California) whose public policy refuses enforcement of the contractual restriction. See *Snow*, 26 N.Y.3d at 468 ("this rule obviates the application of both common-law conflict of law and statutory choice-of-law directives").

The New York law on restrictive covenants is different than Georgia's, conflicting with its public policy against restraints of trade. In particular, New York, unlike the Georgia law applicable to CMGRP's 2008 restrictive covenants, will reform or "blue pencil" and partially enforce overbroad restrictive covenants. *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 34 N.E.3d 357, 362 (N.Y. Ct. App. 2015)(*citations omitted*). Georgia law applicable to employment agreements entered before May 11, 2011, as here, will not. *Boone*, 805 F.Supp.2d at 1377; *Becham v. Synthes*, 2012 U.S. App. Lexis 11225 (11th Cir. 2012); *MacGinnitie*, 420 F.3d at 1241; *LaPolla*, 325 Ga.App. at 266. The only reason CMGRP might claim it can enforce overbroad 2008 restrictive covenants on competition, solicitation, and disclosure against a Georgia citizen is by avoiding the "first filed" rule and getting a New York court to apply New York law to Ms. Gallant, a Georgia resident. "The application of Georgia law is not arbitrary or impermissible because [CMGRP] would be attempting to enforce the NCA [noncompete agreement] against [Gallant], who is living and working in Georgia, where the effects would be felt." *Manuel*, 430 F.3d at 1138 (quoting *Keener III*, 342 F.3d at 1267-68). To do so, it must convince this Court both that it has subject matter jurisdiction and to ignore this elephant in the room.

The *Ameritas* "guideposts," if they can be applied out of their context to an interstate restrictive covenant dispute, support this Court exercising its authority under Fed.R.Civ.P. 57 and 28 U.S.C. § 2201 (if it has subject matter jurisdiction) and denying CMGRP's Motion. First "the strength of the state's interest" and "close nexus between [the issues] and state law and/or public policy" factors [*Ameritas* factors (1) and (9)], given *Georgia's* interest in protecting free competition and avoiding restraints of trade in its borders, favor this Court exercising its 28 U.S.C. § 2201 jurisdiction, since a New York court will not apply Georgia law to Ms. Gallant's Employment Agreement restrictions on her work in Georgia in light of its choice of law term. See *Snow*, 26 N.Y.3d at 468. Contrary to CMGRP's assertion (Doc. No. 4 at 10), only CMGRP, and not the state of New York, has any interest in imposing New York law on a Georgia resident working in Georgia. Given *Snow*, a New York trial court is not in a "better position" to evaluate the factual issues underlying the application of Georgia law to Ms. Gallant's Georgia Employment Agreement restrictive covenants. *Ameritas*, 411 F.3d at 1331, factors (7) and (8).

To be sure, there is an alternative remedy that is better or more effective, *Ameritas* factor (6): remand of this case to Fulton County Superior Court, as requested by Petitioners' Emergency Motion to Remand, Doc. No. 7. In Fulton

County Superior Court, its judge, familiar with Georgia restrictive covenant law, can address the conflict between Georgia and New York law; CMGRP can pursue its compulsory counterclaims against Gallant and APA pursuant to O.C.G.A. § 9-11-13(a); add its claims against Ms. Munguia and Ms. Hudson, if it chooses, pursuant to O.C.G.A. § 9-11-19 or 20; and the parties reap the benefit of Georgia's "first filed" statute, giving priority to this dispute. O.C.G.A. § 9-2-46(a). This solution would serve the goals of Fed.R.Civ.P. 1, "settle the controversy," *Ameritas* factor (2), promote efficiency and comity, and minimize any possible friction between the federal and state courts. *Ameritas* factor (5). It would also avoid CMGRP's "procedural fencing," through a later-filed New York suit asserting claims it can just as well assert in Georgia without conflict with Georgia's public policy discouraging anti-competitive restrictions on free movement of labor. *Ameritas*, 411 F.3d at 1331 (factor (4)).[4]

## **Conclusion**

The Court should deny CMGRP's Motion (Doc. No. 4) under the first-filed rule, as that motion falls far short of meeting CMGRP's burden of proving

[4] CMGRP also claims New York is a "better forum," Doc. No. 4 at 17, based, in part, on its later-filed suit (Doc. No. 4-1 at its Ex. 7) adding claims against individuals (Munguia and Hudson) who live in New York and New Jersey. Of course, their employment connections with APA and Ms. Gallant present sufficient minimum contacts with Georgia to subject them to jurisdiction in this Court.

"compelling circumstances" avoiding the rule. If the *Ameritas* analysis applies at all, its "guideposts" support this Court retaining jurisdiction and considering Petitioners' Motion for Declaratory Relief, if the Court finds CMGRP has met its burden of proving $75,000 in controversy and does not, instead, remand this dispute to Fulton County for its prompt consideration of the case under O.C.G.A. § 9-2-46.

Respectfully submitted this 25th day of March 2016.

BODKER, RAMSEY, ANDREWS,
WINOGRAD & WILDSTEIN, P.C.

By: /s/ Robert E. Rigrish
Robert E. Rigrish
Georgia Bar No. 605573
Harry J. Winograd
Georgia Bar No. 770926
3490 Piedmont Road
Suite 1400
Atlanta, Georgia 30305
404-351-1615 [telephone]
404-352-1285 [fax]
rrigrish@brawwlaw.com [e-mail]
Attorneys for Petitioners

Certificate of Service

I hereby certify that I have this 25th day of March 2016 electronically filed the foregoing Brief in Opposition to Motion to Dismiss or Stay (Doc. No.4) with the Clerk of Court using the CM/ECF system, which will send notification to the following CM/ECF participants, counsel for Respondent:

John W. Egan
Robert S. Whitman
SEYFARTH SAHW, LLP
620 Eight Avenue
P.O. Box 10018
New York, NY 10018-1405

Alexander C. Meier
Daniel P. Hart
SEYFARTH SAHW, LLP
Suite 2500
1075 Peachtree Street, NE
Atlanta, GA 30309

By: /s/ Robert E. Rigrish