UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC. | ) | |
| Petitioners, | ) | |
| v. | ) | CIVIL ACTION NUMBER: 1:16-cv-00689-CC |
| CMGRP, INC. d/b/a ROGERS & COWAN, | ) | |
| Respondent. | ) | |

**PETITIONERS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND AND FOR ENTRY OF DECLARATORY JUDGMENT**

**Relevant Facts**

In this Declaratory Judgment case under 28 U.S.C. § 2201, Petitioner Maggie Gallant, a Georgia resident who worked for Respondent CMGRP, Inc. ("CMGRP") in Georgia from 2014 until December 4, 2015, and now works in Georgia for Petitioner APA, seeks to have Georgia law applied to CMGRP restrictive covenants she was obliged to sign, as a condition of employment, in 2008, to her pursuit of her trade in Georgia. CMGRP removed Petitioners' Declaratory Judgment Petition (Doc. No. 1 and 1-1) to this Court from the Superior

Court for Fulton County. The restrictive covenants are unenforceable as a matter of Georgia law.

Before this Court reaches the merits of this Declaratory Judgment action, there is a critical preliminary matter. The "just, speedy, and inexpensive determination" of this proceeding, consistent with the limits of this Court's diversity jurisdiction, Fed.R.Civ.P. 1 and 28 U.S.C. §§ 1332(a), 1446(c), would best be served by granting Petitioners Gallant and APA's Emergency Motion to Remand, Doc. No. 7. That would put this dispute in Fulton County Superior Court, where Georgia's "first filed" statute, O.C.G.A. § 9-2-46, will give this matter priority. Alternatively, this Court should examine the subject restrictive covenant provisions.

The covenants at issue read, in relevant part:

> 7.02 Employee shall treat as confidential and keep secret the affairs of the Company and shall not at any time during the term of employment or thereafter . . . divulge . . . or use for the benefit of anyone other than the Company . . . any information of a confidential nature relating in any way to the business of the Company ...

October 7, 2008 EMPLOYMENT AGREEMENT, § 7.02 (Doc. No. 1-3)

> 7.05 . . . for a period of one (1) year following the termination of Employee's employment hereunder . . . Employee shall not:
>
> (a) directly or indirectly (i) solicit any employee of the Company to leave such employ to enter the employ . . . of any person, firm or corporation with which Employee is then associated, or (ii) induce or

> encourage any such employees of the Company to join any other company, or (iii) hire any such employee . . . or (iv) otherwise interfere with the relationship between the Company and any employee of the company; or
>
> (b) directly or indirectly (i) solicit or provide . . . on behalf of any other person or entity, publicity, public relations or other services of the type provided by the Company for any person or entity which is a client or prospective client of the Company, or (ii) induce any such client or prospective client to cease to engage the services of the Company or to use the services of any entity or person that competes directly with the Company . . . where the identity of such client or prospective client . . . or the client's . . . need . . . is known by Employee as a part of her employment with the Company . . . As used herein . . . (ii) "employee of the Company" means any individual who is then, or at any time during the preceding 12 month period was, an employee or consultant of the Company.

October 7, 2008 EMPLOYMENT AGREEMENT, § 7.05 (Doc. No. 1-3)

The October 7, 2008 Employment Agreement included a provision, § 8.06, claiming "This Agreement shall be governed by and construed in accordance with the laws of the State of New York."

CMGRP claims (Doc. No. 4-2, Davis Dec. at ¶ 7; Doc. No. 4-1 at its Ex. 7, ¶ 24, 25) that Ms. Gallant entered an additional "Confidentiality and Non-Solicitation Agreement" on October 17, 2008, contained in CMGRP's parent company (IPG)'s Code of Conduct. CMGRP claims that this ancillary employment agreement provides:

> I agree that . . . during the term of my employment and for a period of one year after my employment with IPG ends (the "Non-Solicitation

> Period"), I will not, directly or indirectly, either on my own behalf or on behalf of another entity, solicit any account that is a client of the business unit or units of IPG by which I am employed . . .
>
> I further agree that, during the Non-Solicitation Period, I will not, directly or indirectly, solicit, employ or attempt to employ or assist anyone else to employ any person . . . in the employ of my Business Unit.
>
> I agree that I shall maintain all . . . information concerning the business of IPG and its actual and prospective clients (collectively, "Confidential Information") in strictest confidence both during and at all times following my employment with IPG . . .

Doc. No. 4-1 at its Ex. 7, ¶¶ 25, 26, 28.

From 2014 until her December 4, 2015 resignation, Ms. Gallant resided in Georgia and worked for CMGRP's Rogers and Cowan unit from its office in Atlanta, Georgia, traveling regularly on CMGRP's behalf to New York, Los Angeles and other locations around the country. After her resignation, Gallant started work for Petitioner APA, a Delaware corporation headquartered in Los Angles, a CMGRP competitor. On December 2, 2015, CMGRP's counsel put APA and Gallant on notice of its intent to enforce the restrictive covenants. Doc. No. 4-1 at its Ex. 1. APA and Gallant filed their Declaratory Judgment Petition in the Superior Court for Fulton County, Georgia on January 27, 2016; CMGRP removed the case to this Court on March 3, 2016, when it also filed suit on the matters at issue in New York. Doc. Nos. 1, 1-1; Doc. No.4-1 at its Ex. 7.

**Petitioners Motion For Leave to File Amended Petition**

Petitioners move the Court for leave to file an Amended Petition pursuant to Fed.R.Civ.P 15. Under that rule, a Court's leave is required for an Amendment once a responsive pleading has been filed. CMGRP's Motion to Dismiss or Stay (Doc. No. 4) may constitute such a responsive pleading. Petitioners therefore ask the Court's leave to file an Amended Petition conforming the Petition to 28 U.S.C § 2201, and seeking a declaratory judgment on restrictive covenants, including those described in § 7.05(b) of the Employment Agreement described in their original state court Petition or put at issue by CMGRP's actions. The Amended Petition seeks a declaratory judgment as to other restrictions in the same Employment Agreement (the § 7.02 and 7.05(a), at Doc. No. 1-3) and ancillary restrictive covenants allegedly signed by Gallant on October 17, 2008, coincident to her employment by CMGRP, in a "Confidentiality and Non-Solicitation Agreement" contained in CMGRP's parent company (IPG)'s Code of Conduct. Doc. No. 4-2, Davis Dec. at ¶ 7; 4-1 at its Ex. 7, ¶¶ 25, 27 28. In so doing, Petitioners' Amended Petition asserts claims, presented in CMGRP's later-filed New York suit, that arise out of the conduct, transaction or occurrence set out in their original Petition. Fed.R.Civ.P 15(c)(1)(B). Rule 15(a)(2) provides that the Court should freely give leave when justice so requires. See also *Gramegna v.*

*Johnson*, 846 F.2d 675, 678 (11th Cir. 1988). The decision to grant leave is in the sound discretion of the Court. *Nat't Serv Indus., Inc. v. Vafla Corp*., 694 F.2d 246, 249 (11th Cir. 1982) "Unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. Eastern Air Lines, Inc*., 868 F.2d 401, 407 (11th Cir. 1989); cf. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court should grant leave to amend and accept Petitioners Amended Petition (filed herewith as Doc. No. 13-2) as its Fed.R.Civ.P. 8 pleading in this action.

**<u>Grounds for Entry of A Declaratory Judgment</u>**

In a case of actual controversy within its jurisdiction, 28 U.S.C. § 2201 provides that this Court may "declare the rights and other legal relations of any interested party seeking such declaration . . . [a]ny such declaration shall have the force and effect of a final judgment . . ." In turn, Fed.R.Civ.P. 57 provides, in a declaratory judgment proceeding, "The court may order a speedy hearing." This is consistent with Georgia civil practice, which may apply here and will apply if this Court grants Petitioners Motion to Remand (Doc. No. 7), where O.C.G.A. § 9-4-5 provides that declaratory judgment petitions "may be tried at any time designated by the court not earlier than 20 days after the service thereof," and, given

CMGRP's later-filed New York complaint (Doc. No. 4-1 at its Ex. 7), Georgia's first-filed statute will give this action priority. See O.C.G.A. § 9-2-46(a).[1]

As the pleadings in this action show, there is an actual and contentious controversy between the parties as to the 2008 restrictive covenants. Where a contractual choice of law term appears, the threshold choice of law question is whether the application of another state's law to a Georgia resident violates Georgia's public policy. *Boone v. Corestaff Support Services*, 805 F.Supp. 1362, 1369 (N.D. Ga. 2011). Absent a valid choice of law term, Georgia courts apply Georgia law to restrictive covenant terms attempting to restrict the employment of persons working in Georgia. See *Convergys Corp. v. Keener*, 276 Ga. 808, 276 Ga. 808 (2003)("*Keener II*"); *Nasco, Inc. v. Gimbert*, 239 Ga. 675 (1977).

**A. <u>General Principles of Georgia Law</u>**

Georgia's public policy on restrictive covenants is stated in its Constitution: "A contract in general restraint of trade or which tends to lessen competition is against public policy and is void." 1983 Ga. Const. Art. III., Sec. VI, Para. V(c).

---

[1] *Manuel v. Convergys Corp.*, 430 F.3d 1129, 1138 n. 3 (11th Cir. 2005), considered but did not decide that this Court would be required to apply Georgia's first-filed statute if this case remains in federal court under the *Erie* doctrine. That said, "the existence of such an expedited right in Georgia's courts . . . weighs heavily in favor of a conclusion that the district court [Doc. No. 12-1 (*Manuel* District Court Order)] did not abuse its discretion . . . [in declining to dismiss or stay, permitting Convergys to pursue its claims in Ohio in the later-filed action].

See *Atlanta Bread Co. Int'l, Inc. v. Lupton-Smith*, 285 Ga. 587, 679 S.E.2d 722, 724 (2009), quoting *Rakestraw v. Lanier*, 104 Ga. 188, 194 (1898) (describing policy basis for the law). That said, a restrictive covenant contained in an employment contract is considered to be in partial restraint of trade and will be upheld if:

> The restraint is not unreasonable, is founded on valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public.

W.*R. Grace & Co. v. Mouyal*, 262 Ga. 464 (1992), quoting *Rakestraw*, 104 Ga. at 194. Whether the restraint imposed by an employment contract is reasonable under Georgia law is a question of law for determination by the court. *Mouyal*, 262 Ga. at 465, *Uni-Worth Ent., Inc. v. Wilson*, 244 Ga. 636, 641 (1979)(citations omitted). A restrictive covenant containing sufficiently indefinite restrictions cannot be saved by additional facts and is void on its face. *LaPolla Ind. v. Hess*, 325 Ga. App. 256, 262 (2013)(citations omitted). Restrictions ancillary to an employment agreement are subject to strict scrutiny. *Trujillo v. Great Southern Equip. Sales, LLC*, 289 Ga. App. 474 (2008)(citations omitted); *Palmer & Cay, Inc. v. Marsh & McClennan Companies, Inc.*, 404 F.3d 1297, 1303 (11th Cir. 2005). For employment agreements, as here, "entered into before May 11, 2011," Georgia courts apply the law of restrictive covenants as it existed before the ratification that date of

O.C.G.A. § 13-8-1 *et seq*. *Cox v. Altus Healthcare*, 308 Ga. App. 28, 30 (2011); *see also Becham v. Synthes USA*, 482 Fed. Appx. 387 (11th Cir. 2012). In doing so, Georgia courts, unlike New York courts applying its law, will not “blue pencil” or reform overbroad restrictions for the benefit of the employer who compelled its employee to sign an unlawful restrictive covenant. *Palmer & Cay*, 404 F.3d at 1306-07; *LaPolla Ind., Inc. v. Hess*, 325 Ga. App. 256, 263, 265-66 (2013); *compare Brown & Brown v. Johnson*, 25 N.Y.3d 364, 371 (Ct. App. N.Y. 2015).

The Georgia cases, and decisions from the District Courts in Georgia and the Eleventh Circuit applying Georgia law applicable to agreements “entered into before May 11, 2011” establish basic principles which void, on facial attack, the restrictions CMGRP seeks to impose on Maggie Gallant’s pursuit of her trade in competition with CMGRP on behalf of her new employer, APA. See, for example, *Matthew Focht Enterprises, Inc. v. Lepore*, 2013 WL 4806938, *5 (N.D. Ga. 2013), where Judge Thrash summarizes the reasonableness standards for nonsolicitation and noncompetition restrictions established by Georgia courts over the years.

First, a nondisclosure restriction that is not limited to trade secrets, like that in § 7.02(b) of the October, 2008 Employment Agreement (Doc. No. 1-3) and as claimed by CMGRP to appear in a 2008 Code of Conduct, that contains no

temporal limit (here, "during the term of employment *or thereafter*," § 7.02(b); "both during and *at all times following* my employment," Doc. No. 4-1, at its Ex. 7, p. 7 of 26, ¶ 28) is void.

Second, an employee non-solicitation term like that in § 7.05(a) of the October, 2008 Employment Agreement (Doc. No. 1-3) and as claimed by CMGRP to appear in a 2008 Code of Conduct, that contains neither a geographical nor a relationship restriction (here, "*any* employee of the Company," § 7.05(a)(i); "*any* person who is at such time [i.e., end of Gallant's employment] or who was within the six-month period immediately prior to such time in the employ of my Business Unit," Doc. No. 4-1 at its Ex. 7, p. 7 of 26, ¶ 26) is void.

Third, a client non-solicitation terms like those in § 7.05(b) of the October, 2008 Employment Agreement (Doc. No. 1-3) and as claimed by CMGRP to appear in a 2008 Code of Conduct (Doc. No. 4-1 at its Ex. 7, p 6 of 26, ¶ 25), that attempts to prevent Ms. Gallant from doing un-solicited work for CMGRP or its Rogers & Cowan unit's clients, has no geographic limitation, is not limited to clients with whom Ms. Gallant had a business relationship during her CMGRP employment, and is not limited to the scope of services Ms. Gallant provided while a CMGRP employee, is void.

We address each category of restrictive covenant in turn.

## B. CMGRP's Non-Disclosure Restrictions are Void

The confidentiality or nondisclosure restrictions in § 7.02 of the Employment Agreement (Doc. No. 1-3), and claimed to appear in CMGRP's Code of Conduct (Doc. No. 4-1 at its Ex. 7, ¶ 28) attempts to restrict Ms. Gallant from *ever* discussing or disclosing *anything* "concerning the business of IPG and its actual and prospective clients" or "the affairs of the Company . . . relating in any way to the business of the Company . . . or their clients," characterizing such information as "confidential." These restrictions are not limited to information which would constitute trade secrets,[2] would, on their face, include information CMGRP has made public,[3] and include no temporal restrictions at all, extending into the infinite future. As such, the restrictions are facially void. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1242 (11th Cir. 2005)("confidentiality provision . . . contains no time restriction and . . . protects information which is

[2] Otherwise protected under law, *see* O.C.G.A. § 10-1-761 and, in New York, under its common law; *see LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492 (S.D.N.Y. 2002); *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007 (1993).

[3] CMGRP and its Rogers & Cowan unit are, of course, in the publicity business, and regularly disclose its activities on-line and in the media. See, for example, IPG's website disclosures of Rogers & Cowan's "new campaigns" identifying its customers, with a link to a New York Times article lauding Rogers & Cowan's involvement and its Los Angeles President Alan Nierob's "behind the scenes" publicity work which includes "orchestrating" client Caitlyn Jenner's "coming out." http://www.interpublic.com/news?company_id=2246

publicly available")(citations omitted); *Becham*, 482 Fed. Appx. at 393; *Cox v. Altus Healthcare*, 308 Ga. App. 28, 31(2011), See also *Pregler v. C&Z, Inc.*, 259 Ga. App. 149, 575 S.E.2d 915, 917 (2003); *Carson v. Obor Holding Co.*, 318 Ga. App. 645, 649 (2012); *Nasco*, 239 Ga. at 676 (overbroad covenant "labeled as a covenant against disclosure of trade secrets. Actually, it is a covenant against disclosure of any information concerning any matters affecting or relating to the business of employer").

**C. The Employee Non-Solicitation Provisions Are Void**

CMGRP's restrictions attempt to prevent Ms. Gallant from soliciting or recruiting *any* employee of "the Company" or her "business unit," defined from the context as CMGRP's Rogers & Cowan. See Doc. No. 1-3, Employment Agreement § 7.05(a); Doc. No. 4-01, at its Ex. 7, ¶ 26. Unlike CMGRP's non-disclosure restrictions, these employee non-solicitation terms include temporal restrictions (i.e., the "Non-Solicitation Period," during Gallant's CMGRP employment and for one year after, through December 4, 2016). These provisions are, nonetheless, void, because Georgia law will not enforce an employee non-solicitation restriction lacking a reasonable geographic restriction that is not, on its face, limited to the employer's legitimate interest in restricting solicitation of employees with whom Ms. Gallant had an established relationship. *MacGinnitie*,

420 F.3d at 1242, citing *Hulcher Svcs., Inc. v. R.J. Corman RR Co. LLC*, 247 Ga. App. 486 (2000); cf. *Mouyal*, 262 Ga. at 466-468 & n. 4 (absent geographic restriction, recognizing employer's legitimate interest in protecting "relationships established and/or nurtured while employed . . . preventing the employee from exploiting the personal relationship the employee has enjoyed . . . we construe "contact" to mean interaction . . . which takes place in an effort to further the business relationship").

**D. The Contract Restrictions to Neither Solicit**
**or Provide Are Overbroad and Void Under Georgia Law**

The Employment Agreement provision (Doc. No. 1-3, at § 7.05(b)) that led Petitioners to file their protective Petition in Fulton County Superior Court (Doc. No. 1-1, at ¶¶ 9 – 12), along with its ancillary Code of Conduct restriction (Doc. No. 4-1 at its Ex. 7, ¶ 25) are void for multiple reasons. First, neither defines the scope of its restriction in terms of what Ms. Gallant did for CMGRP's Rogers and Cowan business unit. Second, the Employment Agreement restriction (§ 7.05(b)) attempts to prevent Ms. Gallant from accepting unsolicited work from former CMGRP clients (§ 7.05(b)(i): "solicit or *provide* . . . services")(emphasis supplied). Third, lacking a reasonable geographic restriction, neither non-solicitation provision is limited to CMGRP clients or prospects with whom Ms. Gallant established a relationship as a result of her work at CMGRP. The client non-

solicitation provisions are void on each of these grounds. See *Keener v. Convergys Corp.*, 342 F.3d 1264, 1267-68 (11th Cir. 2002)("*Keener III*"); *Manuel*, 430 F.3d at 1139 ("Under Georgia law, the court correctly held that the NCA was unenforceable due to its overbreadth and indeterminate geographic reach"). If any provision of § 7.05(b) is void on any grounds, they are all unenforceable under the "no blue pencil" rule. *Cox*, 308 Ga. App. at 32(2)(e).[4]

1. Scope of Restriction. § 7.05(b) of the Employment Agreement defines the scope of its restriction in terms of what services "the Company" (the Rogers & Cowan business unit) provided for its clients ("publicity, public relations or others services of the type provided by the Company"). Doc. No. 1-3. The Code of Conduct restriction, as CMGRP describes it, is even more vague and ephemeral: "I will not . . . solicit any account that is a client of the business unit or units of IPG by which I am employed"). Doc. No. 4-1 at its Ex. 7, ¶ 25. Georgia law will not enforce a client or customer non-compete or non-solicitation term that either does not define the scope of the restriction or does so only in terms of what "the Company" provides, and not in terms of the kind, character or scope of work performed by the employee for her previous employer. *Avion Systems v.*

[4] § 7.05(b)(ii) (Doc. No. 1-3) appears to replicate the earlier (b)(i) non-solicitation language, substituting "induce" for solicit. It is void under Georgia law for the same reasons, and falls as well with "no blue pencil."

*Thompson*, 293 Ga. App. 60, 666 S.E.2d 464, 468 (2008); *Uni-Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 639 (1979); *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181 (1977). cf. *LaPolla*, 325 Ga. App. at 263-64; *Lepore*, 2013 WL 4806938 at *5.

2. Accept or Perform Work. § 7.05(b) of the Employment Agreement is void, as well, because it attempts to prevent Ms. Gallant from "providing" "publicity, public relations, or other services of the type provided by the Company" to any of CMGRP/Rogers & Cowan's "clients or prospective clients." Doc. No. 1-3 at § 7.05(b). Again, Georgia law, while it recognized an employer's legitimate interest in limiting, for a reasonable time, a former employee from soliciting her former clients to provide products or services competitive with what she provided while working for the former employer (*Mouyal,* 262 Ga. at 465), will not enforce restrictions which prevent the former employee from accepting work (*i.e.*, providing services), unsolicited, to her former employer's clients. *Palmer & Cay,* 404 F.3d at 1306 (citations omitted); *Vulcan Steel Structures, Inc. v. McCarty*, 329 Ga. App. 220, 222-23 (2014); *Carson*, 318 Ga. App. at 651. See also *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 213 Ga. App. 891, 894 (1994)(at (b) "The restraint is overbroad . . . [as] [i]t prohibits acceptance ["performing services"] of any from work from such clients . . . it

"unreasonably impacts on [the former employee] and on the public's ability to choose the professional services it prefers."

3. Not Limited to Gallant's Clients. A third reason the non-solicitation restrictions (Doc. No. 1-3, Employment Agreement § 7.05(b), and the claimed Code of Conduct provision, Doc. No. 4-1 at its Ex. 7, ¶ 25) are void is that neither includes a geographic restriction or, in its absence, is limited to Ms. Gallant's clients or "accounts" at CMGRP's Rogers & Cowan unit. It has been clear since at least 1992 that such restrictive covenants are void under Georgia law. In *Mouyal*, 262 Ga. at 465-68, the Court opined that, absent a geographic restriction, a term prohibiting post-employment solicitation of customers the employee contacted ("interaction between the employee and client/account which takes place in an effort to further the business relationship") is enforceable and sufficient to protect the previous employer's "protectible [sic] interest in the customer relationships its former employee established/nurtured," "preventing the employee from exploiting the personal relationships . . . enjoyed with the employer's customers." Id., at 466-67, citations omitted; see also *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317, 321(3) (2001). When companies cast a wider net, the restriction is overbroad and unenforceable. See *MacGinnitie*, 420 F.3d at 1241; *Cox*, 308 Ga. App. at 31 (c); *Trujillo v. Great*

*Southern Equip. Sales*, 289 Ga. App. 474, 478 ("under *Mouyal*, a prohibition against doing business with any of an employer's customers, whether or not a relationship existed between the customer and former employee, is overbroad . . . and unenforceable")(citation omitted); *Lepore*, 2013 WL 4806938, * 5; *Carson*, 318 Ga. App. at 651 (overbroad prohibition against accepting any work from clients).

### E. Georgia Law Will Not Enforce the <u>Employment Agreement's Choice of Law Term</u>

The Employment Agreement (Doc. No. 1-3, at § 8.06) has a New York choice of law term.[5] Georgia law will not enforce of choice of law term where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, Georgia. *Keener II*, 276 Ga. at 810-12 (citations omitted); see also *Bunker Hill Int'l v. Nationsbuilder*, 309 Ga. App. 503, 506-07 (2011); *LaPolla*, 325 Ga. App. at 266; *Boone*, 805 F.Supp. 2d at 1368; *Manuel*, 430 F.3d at 1137, 1139. The questions here are whether (1) New York law, if it applied, would enforce the choice of law term against a former employee working

[5] CMGRP's New York Complaint does not claim a choice of law or venue term in the Code of Conduct. See Doc. No. 4-1 at its Ex. 7. In Georgia courts, Georgia choice of law will apply Georgia law to Ms. Gallant's employment (at CMGRP and, since December, 2015, with APA) since 2014. See *Nasco v. Gimbert*, 239 Ga. 675, 676 (1977)(applying, against Tennessee choice of law contract term, Georgia law to employment nonsolicitation and nondisclosure contract terms.

in Georgia and (2) would application of New York law in this context violate Georgia's public policy? Compare *Boone*, 805 F.Supp. 2d at 1368-69 (Delaware choice of law, second suit brought in Delaware); *LaPolla*, 325 Ga.App. at 266 (Texas forum and choice of law in restrictive covenant declaratory judgment action); *Hulcher*, 247 Ga. App. at 489 (Texas choice of law); *Bunker Hill*, 309 Ga. App. at 506, 508 (Illinois choice of forum; reversing dismissal of Georgia restrictive covenant declaratory judgment action); *Manuel*, 430 F.3d. at 1139, 1141-42 (affirming application of Georgia law, rejecting Ohio choice of law term); *Carson*, 318 Ga. App. at 653-54 (rejecting Florida law permitting "blue pencil").

If New York choice of law principles applied (as would be the case if this case is litigated in New York, as CMGRP seeks, Doc. No. 4, 4-1 at its Ex. 7), the contract choice of law term would be enforced. *Ministers and Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 468, 45 N.E.3d 417 (N.Y. App. 2015). New York law, if applied, would contravene the policy of, or would be prejudicial to the interests of, Georgia. The New York law of restrictive covenants, while in some ways similar to Georgia law, would contravene the policy of Georgia applicable to employment agreements entered before May 11, 2011, as here, in that New York law, unlike Georgia law, would "blue pencil" or reform overbroad restrictive covenants, perhaps enforcing the nonsolicitation terms (Employment Agreement §

7.05, clients and employees) on some narrower scope than demanded by CMGRP's restrictions, and imposing some time and scope restrictions on its nondisclosure term (§ 7.02). See *Brown & Brown*, 25 N.Y.3d at 371; *BDO Seidman v. Hirschberg*, 93 N.Y.2d 382, 394 (1999). This is directly contrary to Georgia's public policy, as applied, as here, to agreements entered before May 11, 2011. See *Keener III*, 342 F. 3d at 1267-68 ("We agree with the district court's determination [applying Georgia law] . . . because Convergys would be attempting to enforce the NCA against Keener, who is living and working in Georgia, where the effects would be felt."

Accordingly, the § 8.06 Choice of Law term (Doc. No. 1-3) is unenforceable. See *Boone*, 805 F. Supp. 2d at 1370 ("Delaware courts will enforce tolling of restrictive covenants [unenforceable under Georgia law] . . . [as tolling] is violative of Georgia's public policy, the Court will apply Georgia law"); *LaPolla*, 325 Ga. App. at 266-67 ("Texas law would, nevertheless, require that the covenant be reformed (or blue-penciled) to eliminate the unreasonable restriction and make the covenant enforceable . . . the trial court did not err by refusing to enforce the . . . choice of law clause"); *Hulcher*, 247 Ga. App. at 489 (distinguishing *Iero v. Mohawk Finishing Products*, 243 Ga. App. 670 (2000), a forum selection case where plaintiff failed to show law was contrary to Georgia

law and the enforcement of the restrictions against a Georgian was unreasonable); *Bunker Hill*, 308 Ga. App. at 508 (Georgia courts do not edit or "blue-pencil" . . . in order to salvage some provisions when others are found void . . . application [of Illinois law] would likely result in the enforcement of at least one covenant in violation of Georgia public policy"); *Carson*, 318 Ga. App. at 653 (rejecting Florida choice of law). This Court should, consistent with Georgia public policy and these authorities, reject application of the Employment Agreement's choice of law term (Doc. No. 1-3 at § 8.06) and declare CMGRP's restrictive covenants void as against Georgia public policy.

### F. **<u>The Appropriate Remedy</u>**

If the Court finds that it has subject matter jurisdiction, and does not remand this case to Fulton Superior Court (See Doc. No. 7), The Court should enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring the restrictive covenants in §§ 7.02 and 7.05 of the Employment Agreement void, and rejecting enforcement of its § 8.06 choice of law term against Georgia citizen and resident Maggie Gallant regarding her employment with Petitioner APA. The judgment should also declare void, as against Georgia public policy, the provisions claimed by CMGRP in its Code of Conduct (Doc. No. 4-1 at its Ex. 7, ¶¶ 25, 26 28) insofar as CMGRP asserts that they apply to Georgian Maggie Gallant and her

employment in Georgia since 2014 and with APA. The proper scope of the declaratory judgment, under the Full Faith and Credit Clause of the United States Constitution, U.S. CONST. art IV, § 1, its implementing statute, 28 U.S.C. § 1738, should be same as Georgia courts would apply, and not "attempt to limit its declaratory judgments in cases involving non-competition agreements." See *Hostetler v. Answerthink*, 267 Ga. App. 325, 599 S.E.2d 271, 275 (2004).[6] In *Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1307-1310 (11th Cir. 2005), the court explained that a district court's declaratory judgment voiding restrictive covenants in employment agreements should preclude subsequent claims or issues being relitigated in other states. Given CMGRP's later-filed New York suit, the declaration should also include an injunction enjoining CMGRP from proceeding with its action in New York against Gallant and APA, premised on the void restrictive covenants, or telling third parties that its covenants are enforceable against Ms. Gallant. In this regard, the Eleventh Circuit most recently affirmed Judge Thrash's grant of injunctive relief, incident to a declaratory judgment action, enjoining parties from pursuing claims as permissive

[6] Under Georgia law of claims and issue preclusion, a final declaratory judgment with respect to restrictive covenants precludes subsequent claims or issues being relitigated in other states. *Hostetler*, 599 S.E.2d at 275. See also *Hulcher*, 247 Ga. App. 486 (applying Georgia law to Georgia employee, after former employer obtained ex parte restraining order in Texas on Texas choice of law term in restrictive covenant agreement).

intervenors in an insurance coverage dispute in another state. *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71, 80 (11th Cir. 2013); see also *Wells v. Daugherty Systems, Inc.*, 2014 WL 4545790, *3, *5 (N.D. Ga. 2014)(C.A. No. 1:14-cv-2655-WSD)(granting temporary restraining order barring former employer from bringing, threatening to bring, or informing third parties that it intends to bring action to enforce restrictive covenants void under Georgia law, citing *MacGinnitie, Boone*, and *Keener III*). This Court, applying *Palmer & Cay* and *Collegiate Licensing*, should do the same, declaring the restrictive covenants void as against Maggie Gallant, enjoining CMGRP from pursuing in New York claims against Gallant and APA based on the void restrictive covenants, and, as in *Wells*, restrain CMGRP from telling third parties (particularly, the trade press and Gallant and APA's prospective customers) that the void restrictive covenants are enforceable against Ms. Gallant and, regarding Ms. Gallant, against APA.

## **Conclusion**

The "just, speedy, and inexpensive determination" of this proceeding, consistent with the limits of this Court's diversity jurisdiction, Fed.R.Civ.P. 1 and 28 U.S.C. §§ 1332(a), 1446(c), would best be served by granting Petitioners Gallant and APA's Emergency Motion to Remand, Doc. No. 7. That would put this dispute in Fulton County Superior Court, where Georgia's "first filed" statute,

O.C.G.A. § 9-2-46, will give this matter priority. CMGRP's claims against Gallant and APA, asserted in its later-filed New York action (Doc. No. 4-1 at its Ex. 7), can be heard in that court as compulsory counterclaims, O.C.G.A. § 9-11-13(a) and the claims it asserts against two non-parties can be heard and decided as necessary or permissively joined under O.C.G.A. §§ 9-11-19, 20.

If this Court denies Petitioners' Emergency Motion to Remand (Doc. No. 7), and determines it has subject matter jurisdiction, it should deny CMGRP's Motion to Dismiss or Stay (Doc. No. 4) for the reasons explained in Petitioners' Brief in Response (Doc No. 12) and grant Petitioners the declaratory and injunctive relief sought herein. See *Manuel*, 430 F.3d at 1138 n. 3. CMGRP has the opportunity (and obligation) to pursue its compulsory counterclaims against Ms. Gallant and APA in this action, and should be required to do so if it has good faith claims against Petitioners.[7]

[7] CMGRP can also pursue its claims against APA employees Munguia and Hudson (Doc. No. 4-1 at its Ex. 7) in this first-filed action, either here or in Fulton County, pursuant to Fed.R.Civ.P. Rule 19, 20 or their Georgia Civil Practice Act counterparts, O.C.G.A. §§ 9-11-19, 20. These individuals, supervised by Gallant, have sufficient, specific, minimum contacts with Georgia through that relationship making them subject to personal jurisdiction in Georgia, and are represented by the undersigned Georgia attorneys, who are authorized by them to waive any personal jurisdiction objection to being joined in this action in Georgia.

Respectfully submitted this 28th day of March 2016.

BODKER, RAMSEY, ANDREWS,
WINOGRAD & WILDSTEIN, P.C.

By: /s/ Robert E. Rigrish

Robert E. Rigrish
Georgia Bar No. 605573
Harry J. Winograd
Georgia Bar No. 770926
One Securities Centre
3490 Piedmont Road
Suite 1400
Atlanta, Georgia 30305
404-351-1615 [telephone]
404-352-1285 [fax]
[e-mail]

Attorneys for Petitioners