**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC., | ) | CIVIL ACTION NO. 1:16-cv-00689-TCB |
| Plaintiffs, | ) | |
| v. | ) | |
| CMGRP, INC. d/b/a ROGERS & COWAN, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND**

Defendant CMGRP, Inc. respectfully submits this Response in Opposition to Plaintiffs' Emergency Motion to Remand for Lack of Subject Matter Jurisdiction [ECF No. 7] ("Pls. Motion").

## I. INTRODUCTION

This action centers on the ability of Plaintiffs Maggie Gallant and Agency for the Performing Arts, Inc. ("APA") to solicit clients and employees of Rogers & Cowen ("R&C), a business unit of CMGRP, notwithstanding restrictive covenants and common law principles that would prevent them from doing so. If Plaintiffs obtain a judgment that those covenants and principles are unenforceable or inapplicable, they would realize a substantial financial benefit—well in excess of

$75,000—by not paying damages and other relief to CMGRP for their past actions and being freed to continue such behavior in the future.

Disregarding that commonsense proposition, Plaintiffs argue that the amount-in-controversy requirement is not satisfied because CMGRP failed to identify its lost clients and analyzed the "value of the object of the litigation" from its own perspective rather than from that of Plaintiffs. (Pls. Motion at 7-10.) They contend that the maximum value of the case from their perspective is $60,000, the amount of the opening settlement offer presented by their counsel. (*Id.* at 11-12.)

Plaintiffs are wrong. They stand to gain hundreds of thousands of dollars in revenues and in savings if their claims in this action are successful and, correspondingly, if CMGRP's claims in the parallel New York Action are unsuccessful. Those gains and savings are sufficient to establish that there is far more than $75,000 at stake in this case. Therefore, the amount-in-controversy requirement has been met, and Plaintiffs' Motion should be denied.

## II. ARGUMENT

### A. Standard of Review.

In a declaratory judgment action, the amount in controversy is the value of the declaratory relief, measured from Plaintiffs' perspective, at the time of removal. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000); *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014).

The value of the declaratory relief must be "sufficiently measurable and certain" and not too "speculative and immeasurable" to satisfy the amount-in-controversy requirement. *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 220-21 (11th Cir. 1997).

The removing party is not "required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it"; instead, it meets its burden if the "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" establishes, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *Weiner v. Tootsie Roll Indus., Inc.*, 412 F. App'x 224, 227 (11th Cir. 2011).

**B. <u>The Value of the Relief Sought in This Action Exceeds $75,000</u>.**

The core question in this case is whether the restrictive covenants in Plaintiff Gallant's Employment Agreement with CMGRP are enforceable. The answer to that question has financial ramifications for the parties that exceed $75,000. If Plaintiffs prevail and Gallant is free to continue soliciting CMGRP's clients and employees, she and APA would realize gains in business revenues of much more than that amount, and have already done so through their actions to date. (Declaration of Robert S. Whitman ¶¶ 6-8, Ex. 1.) On the other hand, if Plaintiffs' claims are rejected and the covenants are enforceable, Plaintiffs would forfeit not only the amounts they have already received (which would be turned over to

CMGRP in damages) but lose the same or greater amounts in the future. (Supplemental Declaration of Martin Franken Decl. ¶¶ 4-5, Ex. 2; Whitman Decl. ¶¶ 5-8.) Stated simply, CMGRP's loss is Plaintiffs' gain.

Once this dispute is properly framed in that way, there is little doubt that the $75,000 threshold is met here, since the business value of the covenants at issue is much higher than that amount. The opening declaration of CMGRP's Chief Financial Officer, Martin Franken, showed that Gallant and APA obtained business from former R&C clients worth more than $75,000. (Franken Decl. ¶ 6.) In a supplemental declaration submitted herewith, Mr. Franken specifies the amount of fees that CMGRP realized from just those two clients in 2015.[1] (Franken Decl. ¶¶ 4-5.) That amount represents not just the loss to CMGRP from the business of those two clients, but, as acknowledged by Plaintiffs' counsel, it is the amount of fees APA will receive from those clients in 2016. (Whitman Decl. ¶¶ 5-8.)[2]

This amount—the revenues gained by APA and lost by CMGRP—is a tangible financial benefit that Plaintiffs would not otherwise realize if the restrictive covenants were valid and enforced. As such, it is an appropriate

---

[1] This Declaration does not name the clients because doing so would compromise confidential business information. If the Court believes it necessary to identify the clients, CMGRP respectfully requests leave to provide them in a sealed supplemental submission.

[2] This Court may consider evidence submitted after removal, provided it concerns the amount in controversy as it existed at the time of removal. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("[A] district court may properly consider post-removal evidence in determining whether the jurisdictional amount was satisfied at the time of removal.").

measure for the amount in controversy. *See Molex Co. v. Andress*, 887 F. Supp. 2d 1189, 1197 (S.D. Ala. 2011) (using past sales to assess whether future sales were sufficient to satisfy amount in controversy).

Plaintiffs contend, however, that CMGRP's evidence is too "speculative" or "immeasurable." (Pls. Motion at 5-6.) As noted above, the removing party need not establish the amount with certainty; reasonable deductions, inferences and extrapolations are permitted. Nonetheless, the cases Plaintiffs cite in support of their argument (*see* Pls. Motion at 9-11) are inapposite, for three reasons.

First, none of the cases involved evidence of actual client conversion such as that described above. The closest case is *Cibula v. PSS World Med., Inc.*, 2013 WL 5555445 (N.D. Ga. Oct. 8, 2013), where one customer said he was going to shift business from the former employer to the current employer, but the former employer presented "no evidence that he did, and there [was] no evidence" that other customers actually transferred their business. *Id.* at *3.[3] Here, by contrast, there is specific evidence that at least two customers have already transferred their accounts to Plaintiffs. (Whitman Decl. ¶¶ 2-3; Franken Suppl. Decl. ¶¶ 2-5.)

Second, none of Plaintiffs' cases involved a party that conceded that the removing party's loss of revenue approximately tracked the revenue gained by the

[3] Another case Plaintiffs cite, *Bell v. PSS World Med., Inc.*, 2013 WL 5555480, at *3 n.4 (N.D. Ga. Oct. 8, 2013), appears to be related to *Cibula* and was also handled by Judge Duffey. It presents the same facts against the same defendant by a different plaintiff.

opposing party. *See Conable v. U.S. Foodservice, Inc.*, 2006 WL 149052, at *2 (N.D. Ga. Jan. 18, 2006) (noting that the monetary benefit to the former employers and their new employer was "highly speculative" absent evidence of solicited clients or revenue received from solicited clients). Here, Plaintiffs have admitted that CMGRP's historical revenue figures correlate to the revenues that APA will receive if their claims here are successful. (Whitman Decl. ¶¶ 2-3; Franken Suppl. Decl. ¶¶ 2-5.)

Third, none of Plaintiffs' cases involved a parallel lawsuit to enforce the restrictive covenants. The existence of such an action demonstrates that Plaintiffs' potential gains in the declaratory judgment action (invalidation of restrictive covenants and the freedom to solicit CMGRP's customers and employees) are subsumed within their potential losses in the New York Action (enforcement of the restrictive covenants and payment of damages for violating them).[4] Indeed, if the instant case were to continue notwithstanding CMGRP's pending Motion to Dismiss, then CMGRP would assert as counterclaims some or all of the very claims it is asserting against Gallant and APA in the New York Action.

*Biotronik, Inc. v. Medtronic, USA, Inc.*, 840 F. Supp. 2d 1251 (D. Or. 2012), shows how a parallel state court action helps establish that the amount-in-

[4] As noted in CMGRP's Motion to Dismiss [ECF No. 4] and Plaintiffs' Motion to Amend [ECF No. 13], the New York Action is broader in scope than the instant action. Nonetheless, a significant portion of the New York action represents the flip-side of the claims in this case: enforcement of the restrictive covenants that Plaintiffs here seek to invalidate.

controversy requirement is met in a federal action. After a former Medtronic employee left to join Biotronik, Medtronic commenced an action in state court to enforce restrictive covenants applicable to the employee. Soon thereafter, Biotronik filed its own state court case, seeking a declaratory judgment that it could hire the employee without abiding by the covenants and that it did not cause the employee to violate the covenants. *Id.* at 1255-56. Medtronic removed the case to federal court. Biotronik moved to remand, arguing that the amount in controversy requirement was not met. *Id.* at 1257-58.

The court held that Biotronik's request for a finding that it did not cause the employee to violate his restrictive covenants was effectively a request for a declaration of no liability on Medtronic's tortious interference claim in the state court case. *Id.* at 1258. The value of the declaration, therefore, was based on Biotronik's potential liability on the tortious interference claim. *Id.* at 1257 ("[th]us, to determine the amount in controversy, this court must measure Biotronik's potential liability to Medtronic for tortious interference, or any similar claim" based on claims alleged in the parallel, coercive state court action).

This case is no different. Plaintiffs' request to invalidate Gallant's restrictive covenants effectively seeks a declaration that they are not liable on the claims CMGRP is asserting in the New York Action against them. (*Compare* Compl. at 8-9 (requesting that Court invalidate Gallant's restrictive covenants)

*with* NY Action Compl. ¶¶ 67-79 (ECF No. 4-1 at 29-54) (seeking damages and other relief for violation of those covenants).) Plaintiffs' prayer for relief in the instant action (Compl. at 8-9) does not articulate it in those terms because this action was filed (but not served) before CMGRP filed the New York Action, but the purpose of their lawsuit is the same as Biotronik's: to obtain a favorable ruling on CMGRP's claims against Gallant and APA in the New York Action.[5]

Because such a ruling would effectively erase CMGRP's New York claims against Plaintiffs, this Court should consider the value of those claims as part of the amount in controversy here. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (amount in controversy measured by "monetary value of the benefit that would flow" to plaintiffs if requested relief were granted); *Moorad v. Affordable Interior Sys., LLC*, 2012 WL 162289, at *3 (N.D. Ga. Jan. 18, 2012) (considering potential exposure from claims in parallel proceeding as part of amount in controversy in declaratory judgment action to invalidate restrictive covenants "[b]ecause Defendants were pursuing enforcement of the non-compete at the time of suit"); *Biotronik*, 840 F. Supp. 2d at 1257 ("Where, as here, the

[5] Plaintiffs' proposed "amended" declaratory judgment complaint, filed March 28, 2016, clarifies that a judgment in their favor in this action would be used to refute CMGRP's New York claims based on the restrictive covenants. (*See* Proposed Am. Compl. at 12-13 [ECF No. 13-2] (requesting that Court enjoin CMGRP from litigating New York claims based on Gallant's restrictive covenants).)

lawsuit seeks a declaration of no liability, the value of the relief sought is measured by the value of the liability that would follow if liability were found to exist.”).

### C. <u>The Parties’ Settlement Discussions Prove that the Amount-in-Controversy Requirement is Met.</u>

Instead of addressing the amounts that they would gain or save if their requested declaratory judgment were issued, Plaintiffs focus on the amount their counsel offered in their initial settlement proposal. (Declaration of Harry J. Winograd ¶ 4, ECF No. 7-2).) Since that was only $60,000, they argue, that amount necessarily represents the “maximum monetary valuation” of the declaratory judgment, and therefore establishes that the amount-in-controversy requirement is not met. (Pls. Motion. at 11 (citing ECF No. 7-2 (Winograd Decl. ¶ 4).)

On the contrary, counsel’s submission only underscores that there is more than $75,000 at stake here. As an initial matter, it is frivolous for Plaintiffs to contend that their initial monetary proposal was somehow their “maximum monetary valuation” of the declaratory judgment. Their counsel never so stated during settlement discussions (Whitman Decl. ¶ 8), and such an approach would turn customary settlement negotiation behavior on its head. While $60,000 may have been all that Plaintiffs were willing to pay to settle the dispute at that juncture, it is far from the true “maximum monetary valuation” of the amount at stake between the parties in the dispute.

The sequence of the parties' settlement discussions underscores this conclusion. When Plaintiffs' counsel first presented their settlement offer, he did not articulate a specific monetary figure; rather, he explained that Plaintiffs would be willing to pay CMGRP 10% of APA's anticipated 2016 revenues from two specific clients that had ceased doing business with CMGRP in favor of APA since Gallant's resignation. (Whitman Decl. ¶ 6.) Plaintiffs' counsel later stated that the value of that proposal was approximately $60,000. (*Id.* ¶ 8.) Thus, by Plaintiffs' own calculations, their valuation of the benefit that would flow to them from this action is, at minimum, ***$600,000*** — *i.e.*, 100% of the 2016 revenues they claim will be received by APA from the two clients. (*See* Whitman Decl. ¶¶ 6-8; Franken Decl. ¶¶ 4-5.)[6]

While a settlement offer does not by itself determine whether the amount-in-controversy requirement has been met, it can provide "specific information" to support potential exposure and "count[s] for something" in the pertinent analysis. *Burns v. Windsor Ins. Co.*, 31 F.2d 1092, 1097 (11th Cir. 1994); *see also Grant v. Walmart Stores E., LP*, 2014 WL 2930835, at *2 (M.D. Ga. June 27, 2014). Given

[6] As shown by the Supplemental Franken Declaration, 10% of CMGRP's 2015 revenues from just the two clients at issue would be $82,000, not $60,000. (Suppl. Franken Decl. ¶¶ 4-5.) And the amounts at stake in this litigation are not limited to the two former R&C clients that APA has admitted to doing business with. APA's gains from the activities at issue here would apply to *any* clients with which it does business as a result of actions proscribed by Gallant's restrictive covenants. They have also gained by hiring a team of experienced employees from R&C, in further alleged violation of Gallant's restrictive covenants, without incurring the costs of recruiter fees. (Franken Decl. ¶ 8, ECF No. 1-2.)

Plaintiffs' own quantification of the amount of business they believe to be at stake in this dispute, it is reasonable for this Court to find that the "value of the object of the litigation" from Plaintiffs' perspective is at least $75,000. (Whitman Decl. ¶¶ 3, 6-8.)

## III. CONCLUSION.

CMGRP has established that the value of this litigation exceeded $75,000 at the time of removal. Accordingly, this Court should deny Plaintiffs' motion to remand [ECF No. 7] and Plaintiffs' request for fees and costs.

Respectfully submitted,

CMGRP, INC.

By: *<u>/s/ Daniel P. Hart</u>*

Daniel P. Hart
Georgia Bar No. 141679
dhart@seyfarth.com
Alex Meier
Georgia Bar No. 282350
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Attorneys for Defendant*

Date: April 11, 2016

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C**

I certify that this Response has been prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1C.

*/s/ Daniel P. Hart*
Counsel for Defendant
Georgia Bar No. 141679

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC., | ) | CIVIL ACTION NO. 1:16-cv-00689-TCB |
| Plaintiffs, | ) | |
| v. | ) | |
| CMGRP, INC. d/b/a ROGERS & COWAN, | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I certify that on April 11, 2016, I served the foregoing **DEFENDANT CMGRP, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND** on the following counsel of record via CM/ECF filing:

Harry J. Winograd, Esq.
BODKER, RAMSEY, ANDREWS,
WINOGRAD & WILDSTEIN, P.C.
One Securities Centre
3490 Piedmont Road, Suite 1400
Atlanta, Georgia 30305

By: */s/ Daniel P. Hart*
Daniel P. Hart
Georgia Bar No. 141679