UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

CMGRP, INC.,

*Plaintiff*,

-against-

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,

*Defendants*.

---------------------------------------------------------------- X

Civil Action No.: _______

**DEFENDANTS' NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Agency for the Performing Arts, Inc., ("APA"), Maggie Gallant, Sheila Munguia, and Jenna Hudson (collectively, "Defendants"), file and notify this Court of Defendants' removal of the above-captioned lawsuit from the Supreme Court of the State of New York County of New York (Index No. 651121/2016), to the United States District Court for the Southern District of New York. In support of this Notice of Removal, Defendants state the following:

## I. THE STATE COURT ACTION

1. Plaintiff CMGRP, Inc. filed its Complaint against Defendants in the Supreme Court of the State of New York County of New York (Index No. 651121/2016).

2. In its Complaint, Plaintiff seeks compensatory and punitive damages against former employees of CMGRP and their new employer, APA. A copy of Plaintiff's state-court Complaint is attached as Exhibit 1.

3. Before Plaintiff filed the state-court Complaint against APA, Gallant and others, APA and Gallant sued Plaintiff in a first-filed declaratory judgment case involving many of the

same parties to the Plaintiff's state-court Complaint. The first-filed case was *Maggie Gallant and Agency for the Performing Arts, Inc. v. CMGRP, Inc.* (originally filed in Superior Court of Fulton County, Georgia; subsequently removed to the United States District Court for the Northern District of Georgia, Docket No. 1:16-CV-00689-TCB).

4. Plaintiff CMGRP had knowledge of the first-filed Georgia Complaint before Plaintiff filed this New York state-court Complaint. Defendants aver that Plaintiff's Complaint is an improper action intended to deprive Defendants Gallant and APA of the right to have CMGRP's covenants attempting to restrict Gallant, a Georgia resident previously employed by CMGRP in Georgia, considered under Georgia law and expeditiously decided. Accordingly, Defendants remove this action to this Court with no waiver of any defenses.

5. This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and Defendant is entitled to remove this action pursuant to 28 U.S.C. § 1441(a) and (b) because, despite Plaintiff's attempt to deny it, complete diversity is present among the actual parties at issue, and the Plaintiff's state-court Complaint asserts that the amount in controversy exceeds $75,000.

6. Plaintiff is a New York corporation with its principal place of business in New York. (Ex. 1 ¶ 6.) Therefore, for diversity jurisdiction purposes, Plaintiff is a citizen of New York.

7. Defendant APA is a Delaware corporation with its principal place of business in California. (Ex. 1 ¶ 7.) Therefore, for diversity jurisdiction purposes, Plaintiff APA is a citizen of Delaware and California. 28 U.S.C. § 1332(c)(1).

8. Defendant Gallant is a citizen and resident of the State of Georgia, and has been since 2014, when she was employed by CMGRP's Rogers & Cowan business unit. (Ex. 1 ¶ 8.)

9. Defendant Munguia is a citizen and resident of the State of New York. (Ex. 1 ¶ 9.)

10. Defendant Hudson is a citizen and resident of the State of New Jersey. (Ex. 1 ¶ 10.)

11. Complete diversity is present because the actual parties at issue are of different states, and Defendant Murguia has been fraudulently joined.

12. There is "no possibility, based on the pleadings, that [Plaintiff] can state a cause of action against [Munguia]." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). The only facts alleged against Munguia are that she is a former employee of CMGRP who now works for APA and that she previously agreed to a Code of Conduct that prohibited her from (1) soliciting clients of her former business unit, (2) soliciting or assisting others in employing her former co-workers, and (3) revealing confidential business information. (Ex. 1 ¶¶ 32-39, 53.)

13. Yet, the complaint relies entirely on conclusory assertions that Munguia committed proscribed conduct and is devoid of any factual allegations that Munguia violated any of the Code of Conduct provisions. (Ex. 1 ¶¶ 62, 83, 105, 110.) The complaint does not name a single client that Munguia has allegedly solicited, does not identify any action that Munguia allegedly took to solicit former co-workers, and does not identify any confidential information that Munguia has allegedly revealed. In fact, all of the factual allegations under "Solicitation and Diversion of R&C Clients and Employees to APA" concern alleged actions of Gallant, not Munguia (Ex. 1 ¶¶ 57-62), demonstrating that CMGRP just tacked Munguia onto the claims it actually seeks to assert only against Gallant. It is black letter law that a plaintiff cannot state a claim based on conclusory allegations, particularly when it lumps together all defendants in an impermissible group pleading. *Delran v. Prada USA*, *Corp.*, 23 A.D.3d 308, 308 (1st Dep't

Case 1:16-cv-02523-LGS Document 1 Filed 04/05/16 Page 4 of 5

2005); *Aetna Cas. & Sur. Co. v. Merchants Mut. Ins. Co.*, 84 A.D.2d 736, 736 (1st Dep't 1981). Plaintiff cannot restrict Defendants' right of removal through the unfounded addition of a non-diverse party.

14. Accordingly, all substantive requirements for removal because of diversity of citizenship have been met.

**II. ALL PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET**

15. This Notice of Removal is being filed in the District Court of the United States for the District and division which includes the location where the state-court action is pending. *See* 28 U.S.C. § 1446(a).

16. Each Defendant, represented by undersigned counsel, consents to removal. *See* Exs. 2-5.

17. This Notice of Removal is timely as it is filed within thirty days of service of the New York action. *See* 28 U.S.C. § 1446(b). Service was made on Defendants on March 7, 2016. *See* Ex. 6 (Acknowledgement of Service).

18. While filing this Notice of Removal with this Court, Defendants are simultaneously filing this Notice of Removal with the Clerk of the Court for the Supreme Court of the State of New York County of New York. Defendants will also provide written notice of same to counsel of record for Plaintiff, in accordance with 28 U.S.C. § 1446(d).

19. Attached here as Exhibits 1 and 6 is a copy of all process, pleadings, and orders served upon Defendants.

Case 1:16-cv-02523-LGS Document 1 Filed 04/05/16 Page 5 of 5

## III. CONCLUSION

20. For the foregoing reasons, Defendants hereby removes the civil action pending in the Supreme Court of the State of New York County of New York (Index No. 651121/2016) and respectfully requests that this Court exercise its jurisdiction over the action.

Dated: New York, New York
April 5, 2016

Respectfully submitted,

SHAPIRO ARATO LLP

By: s/ Cynthia S. Arato
Cynthia S. Arato
Matthew J. Craig

500 Fifth Avenue, 40th Floor
New York, NY 10110
Telephone: (212) 257-4880
Facsimile: (212) 202-6417
carato@shapiroarato.com
mcraig@shapiroarato.com

Harry J. Winograd
Robert E. Rigrish
Bodker, Ramsey, Andrews, Winograd
& Wildstein, P.C.
One Securities Centre
3490 Piedmont Road, Suite 1400
Atlanta, GA 30305
Telephone: (404) 351-1615
Facsimile: (404-352-1285
hwinograd@brawwlaw.com
rrigrish@brawwlaw.com
*pro hac vice appearance pending*

*Attorneys for Defendants*

Case 1:16-cv-02323-LGS Document 1-1 Filed 04/05/16 Page 1 of 26

# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- x

CMGRP, INC.,

Plaintiff,

-against-

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,

Defendants.

---------------------------------------- x

Index No. 2016/651121

**COMPLAINT**

Plaintiff CMGRP, Inc. ("CMGRP"), by and through its attorneys, Seyfarth Shaw LLP, complaining of Defendants Agency for the Performing Arts, Inc. ("APA"), Maggie Gallant, ("Gallant"), Sheila Munguia ("Munguia"), and Jenna Hudson ("Hudson") (collectively, the "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages arising from, among other things, Gallant's breach of contractual and common law covenants owed to CMGRP not to solicit or service its clients, not to solicit or hire its employees, and not to misappropriate its confidential information; Munguia's breach of contractual and common law covenants owed to CMGRP not to solicit its clients, not to solicit or hire its employees, and not to misappropriate its confidential information; Hudson's breach of contractual and common law covenants owed to CMGRP not to solicit or service its clients and not to misappropriate its confidential information; and APA's tortious interference with contractual relations by inducing Gallant, Munguia and Hudson to breach these and other obligations. Defendants' conduct has injured

the business unit that Gallant once supervised at CMGRP by transferring nearly all of its key employees, and on information and belief a number of valuable client relationships, to APA.

2. On information and belief, Gallant, Munguia, Hudson and APA developed a concerted plan, while they were still employed at Rogers & Cowan ("R&C"), a business unit of CMGRP, to: (1) recruit subordinates in their business unit to join APA, a direct competitor of R&C; (2) solicit current clients and prospective clients of R&C to do business with APA; and (3) profit from their knowledge of, and access to, R&C's confidential and proprietary information for the benefit of APA and the detriment of R&C.

3. Gallant's, Munguia's and Hudson's conduct is a violation of their written agreements with CMGRP and its affiliated companies, as well as the common law duties and obligations that they owed, and continue to owe, to those companies.

4. On information and belief, APA was aware that the Gallant, Munguia and Hudson were subject to agreements that preclude them from soliciting and servicing R&C clients and soliciting employees, and that require them to maintain the confidentiality of R&C's client and other proprietary information, but APA nonetheless intentionally induced, and continues to induce, Gallant, Munguia and Hudson to breach these obligations.

5. Defendants' actions had the purpose and effect of depriving R&C of revenues, business opportunities and corporate goodwill worth well over $1 million.

## THE PARTIES

6. CMGRP is incorporated in the State of New York and maintains its principal place of business in New York County, New York.

7. APA is incorporated in the State of Delaware and maintains its principal place of business in Beverly Hills, California.

8. Gallant, an individual, is a citizen of the State of Georgia.

9. Munguia, an individual, is a citizen of the State of New York.

10. Hudson, an individual, is a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over the Defendants because they reside and/or do business in this State, and a substantial part of the events giving rise to Plaintiff's claims occurred in this State.

12. Venue is proper in New York County because at least one of the parties is a resident of this County.

## ALLEGATIONS COMMON TO ALL COUNTS

### *The Business of CMGRP and R&C*

13. R&C is an unincorporated business unit of CMGRP. It specializes in public relations and marketing communications services for corporations, individuals, and entertainment properties.

14. CMGRP is part of The Interpublic Group of Companies ("IPG"), a global holding company of approximately 90 agencies that specialize in public relations, consumer advertising, digital marketing, communications planning and media buying, and specialty marketing.

15. Because R&C is a service business, its relationships with its clients are highly dependent on the attention and service that R&C provides on an ongoing basis through its individual team members as well as its strategic position in the competitive field of public relations. As such, some of R&C's most important assets include the goodwill and business reputation it enjoys and the information it has compiled at great cost about its clients and their needs.

16. R&C maintains client files and information that are integral to its efforts to develop and maintain a competitive advantage and goodwill with clients and prospective

clients. Information about R&C's actual and prospective clients and its employees is maintained as protectable proprietary and confidential information by CMGRP.

***Agreements Governing Gallant's Post-Employment Obligations***

17. Gallant commenced employment with CMGRP in October 2008 as a Senior Vice President in charge of R&C's TV & Lifestyle unit.

18. Gallant executed an Employment Agreement (the "Employment Agreement") with CMGRP effective October 1, 2008.

19. Pursuant to the Employment Agreement, Gallant agreed that, during the term of her employment and for one year thereafter (the "Non-Solicitation Period"), she would not solicit or hire R&C employees, induce them to leave R&C, or interfere with their employment relationship with R&C in any way. Section 7.05 of the Employment Agreement states:

> During the Commencement Date through and for a period of one (1) year following the termination of Employee's employment hereunder for any reason, Employee shall not:
>
>> (a) directly or indirectly (i) solicit any employee of the Company to leave such employ to enter the employ of Employee or of any person, firm or corporation with which Employee is then associated, or (ii) induce or encourage any such employee of the Company to leave the employment of the Company or to join any other company, or (iii) hire any such employee of the Company, or (iv) otherwise interfere with the relationship between the Company and any employee of the Company

20. Gallant also promised in the Employment Agreement, for the Non-Solicitation Period, not to solicit or provide services of the type offered by R&C for any person or entity other than R&C. Specifically, she agreed not to:

> (i) solicit or provide, on Employee's own behalf or on behalf of any other person or entity, publicity, public relations or other services of the type provided by the Company for any person or entity which is a client or prospective client of the Company, or (ii) induce any such client or prospective client to cease to engage the services of Company or to use the services of any entity or person that competes directly with the Company, where the identity of such client or prospective client, or the client's or prospective client's need,

Case 1:16-cv-02523-LGS Document 1-1 Filed 04/05/16 Page 6 of 28

> desire or receptiveness to publicity, public relations or other services of the type offered by the Company is known by Employee as a part of her employment with the Company or Spotlight Communications.

21. The Employment Agreement also requires that Gallant treat as confidential and keep secret, and not divulge to anyone other than CMGRP, "any information of a confidential nature relating in any way to the business of the Company or its subsidiaries or affiliates or their clients and obtained by her in the course of her employment hereunder."

22. The Employment Agreement also states that all records, papers, and documents kept or made by Gallant relating to R&C business remain the property of R&C.

23. The Employment Agreement provides that it shall be governed by and construed in accordance with the laws of the State of New York.

24. In addition to the Employment Agreement, Gallant executed a Confidentiality and Non-Solicitation Agreement as part of her acknowledgement of the IPG Code of Conduct. She first did so on October 17, 2008, and re-affirmed her assent to the Agreement (and its various iterations over time) through her annual review and acceptance of the IPG Code of Conduct on January 12, 2009, November 3, 2009, September 7, 2010, November 7, 2011, December 11, 2012, December 19, 2013, and, most recently, on February 18, 2015 (collectively, the "Code of Conduct Non-Solicitation Agreement").

25. Under the Code of Conduct Non-Solicitation Agreement, Gallant promised not to solicit R&C's clients during the same "Non-Solicitation Period" as her Employment Agreement:

> I agree that, in consideration of my being employed by IPG, during the term of my employment and for a period of one year after my employment with IPG ends (the "Non-Solicitation Period"), I will not, directly or indirectly, either on my own behalf or on behalf of any other entity, solicit any account that is a client of the business unit or units of IPG by which I am employed (my "Business Unit") at the time of my termination of employment or that was a client of my Business Unit at any time within one year prior to the date of my termination of employment.

26. The Code of Conduct Non-Solicitation Agreement also prohibits Gallant from soliciting R&C employees during the Non-Solicitation Period:

> I further agree that, during the Non-Solicitation Period, I will not, directly or indirectly, solicit, employ or attempt to employ or assist anyone else to employ any person who is at such time or who was within the six-month period immediately prior to such time in the employ of my Business Unit.

27. In addition to its non-solicitation provisions, the Code of Conduct Non-Solicitation Agreement prohibits Gallant from interfering, directly or indirectly, with the relationship between R&C and its employees and clients.

28. The Code of Conduct Non-Solicitation Agreement also requires that Gallant maintain R&C's client and other proprietary information as strictly confidential during and after her employment:

> I agree that I shall maintain all . . . information concerning the business of IPG and its actual and prospective clients (collectively, "Confidential Information") in strictest confidence both during and at all times following my employment with IPG. I will not at any time during my employment with IPG or after my employment with IPG ends for any or no reason, except as directed or permitted by IPG in writing, disclose or take any action or inaction that could result in disclosure to any entity of any Confidential Information, or in any way directly or indirectly utilize Confidential Information for any purpose, including without limitation for my own benefit or the benefit of others.

29. The Code of Conduct Non-Solicitation Agreement defines "Confidential Information" to include, among other things, business prospects, research results, media plans, reports, information regarding IPG's or its actual or prospective clients' advertising, marketing and sales promotion products, services and strategies.

30. Gallant also expressly agreed that:

> failure to comply with any of the terms of this Agreement shall irreparably harm the business of IPG, and that IPG shall be entitled to obtain a court order in any court of competent jurisdiction preventing me from committing, threatening or continuing any acts of material non-compliance with this

Case 1:16-cv-02523-LGS Document 1-1 Filed 04/05/16 Page 8 of 26

> Agreement. I agree that IPG shall be entitled to recover from me any and all attorneys' fees, costs and expenses incurred by or on behalf of IPG in enforcing or attempting to enforce any provision of this Agreement or any of IPG's rights hereunder.

31. Gallant certified that she read and understood the terms of the Code of Conduct Non-Solicitation Agreement when she executed the acknowledgment on October 17, 2008, and on each of the subsequent occasions when she re-affirmed it, most recently on February 18, 2015.

*Agreement Governing Munguia's Post-Employment Obligations*

32. Munguia commenced employment with CMGRP in July 2011 as a Vice President in R&C's TV & Lifestyle unit. At all times during her employment with CMGRP, she reported to Gallant.

33. Munguia executed the Code of Conduct Non-Solicitation Agreement on August 11, 2011 and re-affirmed her assent (and its various iterations over time) through her annual review and acceptance of the IPG Code of Conduct on November 7, 2011, December 18, 2012, September 27, 2013, and, most recently, on November 6, 2014.

34. Under the Code of Conduct Non-Solicitation Agreement, Munguia promised not to solicit R&C's clients, as follows:

> I agree that, in consideration of my being employed by IPG, during the term of my employment and for a period of one year after my employment with IPG ends (the "Non-Solicitation Period"), I will not, directly or indirectly, either on my own behalf or on behalf of any other entity, solicit any account that is a client of the business unit or units of IPG by which I am employed (my "Business Unit") at the time of my termination of employment or that was a client of my Business Unit at any time within one year prior to the date of my termination of employment.

35. The Code of Conduct Non-Solicitation Agreement also prohibits Munguia from soliciting R&C employees during the Non-Solicitation Period:

> I further agree that, during the Non-Solicitation Period, I will not, directly or indirectly, solicit, employ or attempt to employ or assist anyone else to employ any



24980526v.6

Case 1:16-cv-02523-LGS Document 1-1 Filed 04/05/16 Page 9 of 26

> person who is at such time or who was within the six-month period immediately prior to such time in the employ of my Business Unit.

36. In addition to its non-solicitation provisions, the Code of Conduct Non-Solicitation Agreement prohibits Munguia from interfering, directly or indirectly, with the relationship between R&C and its employees and clients.

37. The Code of Conduct Non-Solicitation Agreement also requires that Munguia maintain R&C's client and other proprietary information as strictly confidential during and after her employment:

> I agree that I shall maintain all . . . information concerning the business of IPG and its actual and prospective clients (collectively, "Confidential Information") in strictest confidence both during and at all times following my employment with IPG. I will not at any time during my employment with IPG or after my employment with IPG ends for any or no reason, except as directed or permitted by IPG in writing, disclose or take any action or inaction that could result in disclosure to any entity of any Confidential Information, or in any way directly or indirectly utilize Confidential Information for any purpose, including without limitation for my own benefit or the benefit of others.

38. The Code of Conduct Non-Solicitation Agreement defines "Confidential Information" to include, among other things, business prospects, research results, media plans, reports, information regarding IPG's or its actual or prospective clients' advertising, marketing and sales promotion products, services and strategies.

39. Munguia also expressly agreed that:

> failure to comply with any of the terms of this Agreement shall irreparably harm the business of IPG, and that IPG shall be entitled to obtain a court order in any court of competent jurisdiction preventing me from committing, threatening or continuing any acts of material non-compliance with this Agreement. I agree that IPG shall be entitled to recover from me any and all attorneys' fees, costs and expenses incurred by or on behalf of IPG in enforcing or attempting to enforce any provision of this Agreement or any of IPG's rights hereunder.

***Agreements Governing Hudson's Post-Employment Obligations***

40. Hudson commenced employment with CMGRP in September 2012 as an Account Director in R&C's TV & Lifestyle unit. At all times during her employment with CMGRP, she reported to Gallant.

41. At the start of her employment, Hudson executed an offer letter (the "Offer Letter") on October 2, 2012.

42. Under the terms of the Offer Letter, Hudson promised, for one year following her separation from the company for any reason, not to, *inter alia*:

> directly or indirectly solicit or handle on [her] own behalf or on behalf of any other person, firm or corporation, the event marketing, public relations, advertising, sales promotion or market research business of any person or entity which is a Client of the Company, or . . . induce any such Client to cease to engage the services of the Company or to use the services of any entity or person that competes directly with a material business of the Company, where the identity of such Client, or the Client's need, desire or receptiveness to services offered by the Company is known by [her] as a part of [her] employment with the Company.

43. The Offer Letter defined "Client" to include:

> (1) anyone who is a client of the Company at the time of the alleged prohibited conduct; (2) anyone who was a client at any time during the one year period immediately preceding the date of the alleged prohibited conduct; and (3) any prospective clients to whom the Company had made a presentation (or similar offering of services) within a period of 360 days immediately preceding the date of termination of [Hudson's] employment.

44. Hudson signed a second version of the Offer Letter, with the same or substantially similar pertinent language as the initial Offer Letter, on October 21, 2012.

45. Hudson executed the Code of Conduct Non-Solicitation Agreement on October 21, 2012 and re-affirmed her assent (and its various iterations over time) through her review and acceptance of IPG's Code of Conduct on November 2, 2012, November 30, 2012, September 24, 2013, and, most recently, on October 29, 2014.

46. Under the Code of Conduct Non-Solicitation Agreement, Hudson promised not to solicit R&C's clients, as follows:

> I agree that, in consideration of my being employed by IPG, during the term of my employment and for a period of one year after my employment with IPG ends (the "Non-Solicitation Period"), I will not, directly or indirectly, either on my own behalf or on behalf of any other entity, solicit any account that is a client of the business unit or units of IPG by which I am employed (my "Business Unit") at the time of my termination of employment or that was a client of my Business Unit at any time within one year prior to the date of my termination of employment.

47. In addition to its non-solicitation provisions, the Code of Conduct Non-Solicitation Agreement prohibits Hudson from interfering, directly or indirectly, with the relationship between R&C and its employees and clients.

48. The Code of Conduct Non-Solicitation Agreement also requires that Hudson maintain R&C's client and other proprietary information as strictly confidential during and after her employment:

> I agree that I shall maintain all . . . information concerning the business of IPG and its actual and prospective clients (collectively, "Confidential Information") in strictest confidence both during and at all times following my employment with IPG. I will not at any time during my employment with IPG or after my employment with IPG ends for any or no reason, except as directed or permitted by IPG in writing, disclose or take any action or inaction that could result in disclosure to any entity of any Confidential Information, or in any way directly or indirectly utilize Confidential Information for any purpose, including without limitation for my own benefit or the benefit of others.

49. The Code of Conduct Non-Solicitation Agreement defines "Confidential Information" to include, among other things, business prospects, research results, media plans, reports, information regarding IPG's or its actual or prospective clients' advertising, marketing and sales promotion products, services and strategies.

50. Hudson also expressly agreed that:

> failure to comply with any of the terms of this Agreement shall irreparably harm the business of IPG, and that IPG shall be entitled to obtain a court order

in any court of competent jurisdiction preventing me from committing, threatening or continuing any acts of material non-compliance with this Agreement. I agree that IPG shall be entitled to recover from me any and all attorneys' fees, costs and expenses incurred by or on behalf of IPG in enforcing or attempting to enforce any provision of this Agreement or any of IPG's rights hereunder.

***Gallant's, Munguia's and Hudson's Resignations***

51. On October 30, 2015, Gallant advised R&C that she was resigning her employment. Her employment terminated on December 4, 2015.

52. Gallant currently works for APA and performs the same or substantially similar services that she was providing at R&C, in direct competition with R&C.

53. Only days after Gallant announced her resignation, Munguia, who reported directly to Gallant at R&C, announced her resignation from R&C. Her employment terminated on December 4, 2015. She is currently employed by APA and works in direct competition with R&C.

54. Hudson's employment terminated on December 11, 2015. She is currently employed by APA and works in direct competition with R&C.

55. In November 2015, three other employees in the R&C TV & Lifestyle business – Lauren Kenyon, Rachel Platner, and Kate Manwaring – announced their resignations. These employees' termination dates were in December 2015. All are currently employed at APA and now work in direct competition with R&C.

56. Many of these former R&C employees implicitly acknowledged the impropriety of the circumstances of their resignations by refusing to advise R&C of their next employer, stating only, in words or substance, that they wanted to "recharge," "take time off" or the like. These statements were knowingly false, as each of these employees officially joined APA soon after leaving R&C.

***Solicitation and Diversion of R&C Clients and Employees to APA***

57. During her employment with R&C, Gallant initiated communications with existing and prospective R&C clients to solicit business indirectly on behalf of APA. On information and belief, these solicitation efforts continued after she left R&C.

58. After advising R&C of her resignation, Gallant forwarded emails, from her company account to her personal account, that related to specific client opportunities or pitches at R&C. For example, at the request of R&C's CEO, Mark Owens, Gallant prepared an email summary regarding the status of various R&C client development efforts. Gallant sent that email to Owens and one minute later forwarded it to her personal e-mail account. On information and belief, Gallant's purpose in doing so was to retain access to this information in the service of her future employer, APA.

59. Gallant intentionally refused to undertake a thorough and effective transitioning effort of R&C client relationships after announcing her departure because she intended to service those same clients when she got to APA.

60. After Gallant and nearly all of her team resigned to join APA, a number of R&C clients discontinued working with R&C. Some of these clients have begun working with APA.

61. On information and belief, the foregoing e-mails, documents and client information, as well as additional documents and information to be discovered as this litigation proceeds, were not kept confidential but instead were misappropriated by Gallant for the benefit of herself and APA. On information and belief, this included information and documents identifying CMGRP's clients and prospective clients, such as their contact names, email addresses, and telephone numbers.

62. On information and belief, Gallant, Munguia and Hudson, in concert with other former CMGRP employees who are also subject to the confidentiality and non-solicitation provisions in the Code of Conduct Non-Solicitation Agreement, have directly or indirectly solicited CMGRP clients and prospects, including but not limited to those with whom they had contact while at R&C. By this and other conduct, Gallant, Munguia and Hudson have also interfered with CMGRP's relationships with its clients, in violation of that Agreement.

***APA's Interference with Contracts between CMGRP and its Employees***

63. On information and belief, APA knew that Gallant, Munguia, and Hudson, as well as Lauren Kenyon, Rachel Platner, and Kate Manwaring, were subject to contractual requirements not to solicit CMGRP clients and employees, or interfere with these relationships.

64. On information and belief, APA knowingly induced and caused Gallant, Munguia, Hudson and others to breach their obligations to CMGRP by facilitating the transfer of personnel, information and valuable client relationships from CMGRP to APA.

65. On information and belief, APA is aware of Gallant's, Munguia's, and Hudson's misappropriation and use of confidential and proprietary information, solicitation of CMGRP employees and/or solicitation of CMGRP's clients and prospective clients, and permitted and/or encouraged these activities in order to effectuate the transfer of a substantial portion of R&C's TV & Lifestyle business to APA without the payment of compensation to CMGRP.

66. Defendants' actions have severely harmed CMGRP's business, including its relationships with its client's business, reputation and client goodwill.

**COUNT I**
**(Breach of Contract Against Gallant – Employment Agreement)**

67. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 66 of the Complaint as if fully set forth herein.

Case 1:16-cv-02523-LGS Document 1-1 Filed 04/05/16 Page 15 of 26

68. Gallant entered into the Employment Agreement with CMGRP, which expressly prohibits her from, *inter alia*: (a) soliciting, inducing, or encouraging any R&C employee to leave his or her employment; (b) interfering with the relationship between R&C and any of its employees; (c) soliciting or providing public relations services, or other services provided by R&C, to any client or prospective client of R&C; (d) inducing any R&C client or prospective client to cease engaging the services of R&C or to use the services of a competing company; and (e) failing to maintain the confidentiality of any information concerning R&C's business, affiliates or clients obtained by Gallant during the course of her employment.

69. The restrictive covenants contained in the Employment Agreement remain in full force and effect, and Gallant, for good consideration, was obligated to comply with them.

70. CMGRP has satisfied all of its obligations under the terms and conditions of the Employment Agreement.

71. Gallant has breached the Employment Agreement by: (a) soliciting CMGRP's employees during the Non-Solicitation Period and encouraging them to leave the employment of R&C for APA, the direct result of which has been the mass departure of employees in the TV & Lifestyle unit of R&C for APA; (b) interfering with CMGRP's relationships with its employees during the Non-Solicitation Period; (c) soliciting and servicing the business and patronage of CMGRP's clients during the Non-Solicitation Period; (d) unlawfully diverting business from CMGRP to APA during the Non-Solicitation Period; and (e) failing to maintain the confidentiality of CMGRP's client and business information, but instead misappropriating and exploiting that information for her personal gain and that of APA.

72. Gallant's actions have damaged CMGRP's legitimate business interests, and denied it the benefit of its bargain with respect to Gallant's restrictive covenants.

73. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial.

**COUNT II**
**(Breach of Contract Against Gallant – Code of Conduct)**

74. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

75. Gallant accepted and agreed to comply with the Code of Conduct Non-Solicitation Agreement, which expressly prohibits her from, *inter alia*: (1) soliciting clients during the Non-Solicitation Period; (2) soliciting employees during the Non-Solicitation Period; (3) interfering with client and employee relationships during the Non-Solicitation Period; and (4) failing to maintain the strict confidentiality of client and other proprietary information during and after her employment.

76. The restrictive covenants contained in the Code of Conduct Non-Solicitation Agreement remain in full force and effect, and Gallant, for good consideration, was obligated to comply with them.

77. Gallant has breached the Code of Conduct Non-Solicitation Agreement by: (a) soliciting the business and patronage of CMGRP's clients, and unlawfully diverting business from CMGRP to APA during the Non-Solicitation Period; (b) soliciting CMGRP's employees during the Non-Solicitation Period, the direct result of which has been the mass departure of employees in the TV & Lifestyle unit of R&C for APA; (c) interfering with CMGRP's relationships with its clients and employees during the Non-Solicitation Period; and (d) misappropriating and exploiting CMGRP's confidential and proprietary information for her personal gain and that of APA.

78. Gallant's actions have damaged CMGRP's legitimate business interests, and denied it the benefit of its bargain with respect to Gallant's restrictive covenants.

79. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial.

**COUNT III**
**(Breach of Contract Against Munguia – Code of Conduct)**

80. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 79 of the Complaint as if fully set forth herein.

81. Munguia accepted and agreed to comply with the Code of Conduct Non-Solicitation Agreement, which expressly prohibits her from, *inter alia*: (1) soliciting clients during the Non-Solicitation Period; (2) soliciting employees during the Non-Solicitation Period; (3) interfering with client and employee relationships during the Non-Solicitation Period; and (4) failing to maintain the strict confidentiality of client and other proprietary information during and after her employment.

82. The restrictive covenants contained in the Code of Conduct Non-Solicitation Agreement remain in full force and effect, and Munguia, for good consideration, was obligated to comply with them.

83. Munguia has breached the Code of Conduct Non-Solicitation Agreement by: (a) soliciting the business and patronage of CMGRP's clients, and unlawfully diverting business from CMGRP to APA during the Non-Solicitation Period; (b) soliciting CMGRP's employees during the Non-Solicitation Period, the direct result of which has been the mass departure of employees in the TV & Lifestyle unit of R&C for APA; (c) interfering with CMGRP's relationships with its clients and employees during the Non-Solicitation Period; and (d)

misappropriating and exploiting CMGRP's confidential and proprietary information for her personal gain and that of APA.

84. Munguia's actions have damaged CMGRP's legitimate business interests, and denied it the benefit of its bargain with respect to Munguia's restrictive covenants.

85. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial.

**COUNT IV**
**(Breach of Contract Against Hudson – Offer Letter)**

86. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 85 of the Complaint as if fully set forth herein.

87. Hudson accepted and agreed to comply with the Offer Letter, which expressly prohibits her, directly or indirectly, during the one-year period following her separation from R&C for any reason, from, *inter alia*: (1) soliciting or handling the event marketing, public relations, advertising, sales promotion or market research business of any R&C Client (as defined therein); or (2) inducing certain R&C Clients to cease using R&C's services or to use the services of a competing company.

88. The restrictive covenants contained in the Offer Letter remain in full force and effect, and Hudson, for good consideration, was obligated to comply with them.

89. Hudson has breached the Offer Letter by: (a) providing services to R&C's Clients (as defined therein) on behalf of APA; and (b) soliciting the business of R&C's Clients on behalf of APA.

90. Hudson's actions have damaged CMGRP's legitimate business interests, and denied it the benefit of its bargain with respect to Hudson's restrictive covenants.

Case 1:16-cv-02523-LGS Document 1-1 Filed 04/05/16 Page 19 of 26

91. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial.

**COUNT V**
**(Breach of Contract Against Hudson – Code of Conduct)**

92. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 91 of the Complaint as if fully set forth herein.

93. Hudson accepted and agreed to comply with the Code of Conduct Non-Solicitation Agreement, which expressly prohibits her from, *inter alia*: (1) soliciting clients during the Non-Solicitation Period; (2) interfering with client and employee relationships during the Non-Solicitation Period; and (3) failing to maintain the strict confidentiality of client and other proprietary information during and after her employment.

94. The restrictive covenants contained in the Code of Conduct Non-Solicitation Agreement remain in full force and effect, and Hudson, for good consideration, was obligated to comply with them.

95. Hudson has breached the Code of Conduct Non-Solicitation Agreement by: (a) soliciting the business and patronage of CMGRP's clients, and unlawfully diverting business from CMGRP to APA during the Non-Solicitation Period; (b) interfering with CMGRP's relationships with its clients during the Non-Solicitation Period; and (c) misappropriating and exploiting CMGRP's confidential and proprietary information for her personal gain and that of APA.

96. Hudson's actions have damaged CMGRP's legitimate business interests, and denied it the benefit of its bargain with respect to Hudson's restrictive covenants.

97. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial.

**COUNT VI**
**(Breach of Duty of Loyalty Against Gallant)**

98. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 97 of the Complaint as if fully set forth herein.

99. By virtue of her position at CMGRP, Gallant owed CMGRP a duty of utmost good faith and loyalty, including a duty not to act contrary to the interests of CMGRP, including but not limited to the solicitation of CMGRP clients and employees to a competing firm to the detriment of CMGRP, and to maintain CMGRP's client and other proprietary business information as confidential.

100. Through her wrongdoing as alleged herein, Gallant breached her duty of loyalty to CMGRP.

101. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial, including without limitation the amounts Gallant earned as compensation during her period of disloyalty, which are subject to forfeiture pursuant to the "faithless servant" doctrine of New York law.

102. Punitive damages should also be awarded in that Gallant's conduct was willful, wanton and malicious.

**COUNT VII**
**(Breach of Duty of Loyalty Against Munguia)**

103. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 102 of the Complaint as if fully set forth herein.

104. By virtue of her position at CMGRP, Munguia owed CMGRP a duty of utmost good faith and loyalty, including a duty not to act contrary to the interests of CMGRP, including but not limited to the solicitation of CMGRP clients and employees to a competing firm to the

detriment of CMGRP, and to maintain CMGRP's client and other proprietary business information as confidential.

105. Through her wrongdoing as alleged herein, Munguia breached her duty of loyalty owed to CMGRP.

106. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial, including without limitation the amounts Munguia earned as compensation during her period of disloyalty, which are subject to forfeiture pursuant to the "faithless servant" doctrine of New York law.

107. Punitive damages should also be awarded in that Munguia's conduct was willful, wanton and malicious.

**COUNT VIII**
**(Unfair Competition Against All Defendants)**

108. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 107 of the Complaint as if fully set forth herein.

109. By virtue of their employment at CMGRP and performance of responsibilities for CMGRP, Gallant, Munguia and Hudson were given access to and possessed client and employee information that is proprietary and highly confidential.

110. Defendants have misappropriated, exploited and misused this information for their respective self-interests and have thereby gained an unfair competitive advantage in relation to CMGRP.

111. Defendants have further unfairly competed with R&C by using this information to transfer personnel and clients to APA, without the payment of compensation to CMGRP.

112. By reason of the foregoing, CMGRP has been damaged by in an amount to be determined at trial.

Case 1:16-cv-02323-LGS Document 1-1 Filed 04/05/16 Page 22 of 26

113. Punitive damages should also be awarded in that the conduct of the Defendants was willful, wanton and malicious.

**COUNT IX**
**(Tortious Interference With Contractual Relations Against APA)**

114. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 113 of the Complaint as if fully set forth herein.

115. Gallant, Munguia, Hudson and other CMGRP employees entered into agreements that include covenants that provide for continuing contractual obligations after the termination of the employment relationship.

116. On information and belief, APA knew of the existence of these agreements and the covenants contained therein.

117. On information and belief, APA intentionally induced Gallant, Munguia, Hudson and others to violate these agreements by soliciting CMGRP's clients, prospective clients and employees, interfering with these relationships, servicing CMGRP's clients and prospective clients, and misappropriating CMGRP's confidential and proprietary information in order to unfairly compete with CMGRP.

118. By reason of the foregoing, CMGRP has been damaged in an amount to be determined at trial.

119. Punitive damages should also be awarded in that the conduct of APA was willful, wanton and malicious.

**COUNT X**
**(Unjust Enrichment Against APA)**

120. CMGRP repeats and realleges each and every allegation contained in Paragraphs 1 through 119 of the Complaint as if fully set forth herein.

121. By virtue of their employment at CMGRP and performance of responsibilities for CMGRP, Gallant, Munguia and Hudson were given access to and possessed client and employee information that was proprietary and confidential. On information and belief, APA obtained or otherwise befitted from this information.

122. By the acts described herein, APA effectuated the transfer of a substantial portion of R&C's TV & Lifestyle business to APA without the payment of compensation to CMGRP.

123. APA in equity and good conscience should not have engaged in or benefitted from these acts.

124. As a result, APA has been unjustly enriched at the expense of CMGRP in an amount to be proven at trial.

**WHEREFORE**, CMGRP respectfully requests that the Court enter Judgment:

(a) finding that Gallant breached her covenants in the Employment Agreement;

(b) finding that Gallant breached her covenants in the Code of Conduct Non-Solicitation Agreement;

(c) finding that Munguia breached her covenants in the Code of Conduct Non-Solicitation Agreement;

(d) finding that Hudson breached her covenants in the Offer Letter;

(e) finding that Hudson breached her covenants in the Code of Conduct Non-Solicitation Agreement;

(f) finding that Gallant breached her duty of loyalty to CMGRP and directing that she forfeit compensation earned during her period of disloyalty pursuant to the "faithless servant" doctrine of New York law.

Case 1:16-cv-02525-LGS Document 1-1 Filed 04/05/16 Page 24 of 26

(g) finding that Munguia breached her duty of loyalty to CMGRP and directing that she forfeit compensation earned during her period of disloyalty pursuant to the "faithless servant" doctrine of New York law.

(h) finding that all Defendants engaged in Unfair Competition against CMGRP;

(i) enjoining Gallant, for a period of twelve (12) months from entry of the Order of this Court, from directly or indirectly: (i) contacting, servicing, or soliciting the trade and patronage of CMGRP's clients, and (ii) soliciting CMGRP's employees, encouraging them to leave CMGRP for APA, or interfering with the relationship between CMGRP and its employees, thereby enjoining Gallant's continuing breaches of her obligations to CMGRP and APA's tortious inducement of her said breach;

(j) enjoining Munguia, for a period of twelve (12) months from entry of the Order of this Court, from directly or indirectly: (i) contacting, servicing, or soliciting the trade and patronage of CMGRP's clients, and (ii) soliciting CMGRP's employees, encouraging them to leave CMGRP for APA, or interfering with the relationship between CMGRP and its employees, thereby enjoining Munguia's continuing breaches of her obligations to CMGRP and APA's tortious inducement of her said breach;

(k) enjoining Hudson, for a period of twelve (12) months from entry of the Order of this Court, from directly or indirectly: (i) contacting, servicing, or soliciting the trade and patronage of CMGRP's clients, and (ii) soliciting CMGRP's employees, encouraging them to leave CMGRP for APA, or interfering with the relationship between CMGRP and its employees, thereby enjoining Hudson's continuing

breaches of her obligations to CMGRP and APA's tortious inducement of her said breach;

(l) enjoining the Defendants from, directly or indirectly, disclosing or using any confidential and/or proprietary information of any kind, nature or description belonging to CMGRP;

(m) directing the Defendants to return to CMGRP all documents, records and property belonging to CMGRP of any kind or nature whatsoever and in any form whatsoever (including copies thereof and computer and other electronic records), which are within the Defendants' possession, custody or control;

(n) finding in CMGRP's favor as to all Counts and against Defendants jointly and severally, where applicable, for all damages that may be calculated at trial suffered by CMGRP as a result of Defendants' misconduct, plus interest;

(o) adjudging the Defendants liable for compensatory damages in an exact amount to be determined at trial;

(p) adjudging the Defendants liable for punitive damages in an exact amount to be determined at trial;

(q) granting CMGRP costs and expenses, including reasonable attorneys' fees; and

(r) granting CMGRP such other and further relief as the Court deems just and proper.

Case 1:16-cv-02523-LGS Document 1-1 Filed 04/05/16 Page 26 of 26

Dated: New York, New York
March 3, 2016

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Robert S. Whitman*

Robert S. Whitman, Esq.
rwhitman@seyfarth.com
John W. Egan, Esq.
jegan@seyfarth.com

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

*Attorneys for Plaintiff*



24980526v.6

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

CMGRP, INC.,

*Plaintiff*,

-against-

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,

*Defendants*.

---------------------------------------------------------------- X

Civil Action No.

**CONSENT TO REMOVAL**

This Consent To Removal is on behalf of the AGENCY FOR THE PERFORMING ARTS, INC ("APA"), a named Defendant in this action. APA consents to the removal of this suit from the Supreme Court of the State of New York, County of New York (Index No. 651121/2016) to the United States District Court for the Southern District of New York.

April 4, 2016.

Respectfully submitted,

JULIE SHAPIRO
SENIOR VICE PRESIDENT BUSINESS and LEGAL AFFAIRS/GENERAL COUNSEL APA

# Exhibit 3

Case 1:16-cv-02528-LGS Document 1-3 Filed 04/05/16 Page 2 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CMGRP, INC.,<br><br>*Plaintiff*,<br><br>-against-<br><br>AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,<br><br>*Defendants*. | Civil Action No. |

## CONSENT TO REMOVAL

I, MAGGIE GALLANT, have been named as a Defendant in this action. I consent to the removal of this suit from the Supreme Court of the State of New York, County of New York (Index No. 651121/2016) to the United States District Court for the Southern District of New York.

April 4, 2016.

Respectfully submitted,

MAGGIE GALLANT

[Type text]

# Exhibit 4

Case 1:16-cv-02523-LGS Document 1-4 Filed 04/05/16 Page 2 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CMGRP, INC.,

*Plaintiff*,

-against-

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,

*Defendants*.

Civil Action No.

**CONSENT TO REMOVAL**

I, SHEILA MUNGUIA, have been named as a Defendant in this action. I consent to the removal of this suit from the Supreme Court of the State of New York, County of New York (Index No. 651121/2016) to the United States District Court for the Southern District of New York

April 4, 2016.

Respectfully submitted,

SHEILA MUNGUIA
370 Manhattan Avenue, #3C
NY, NY 10026

[Type text]

# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CMGRP, INC.,<br><br>*Plaintiff,*<br><br>-against-<br><br>AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,<br><br>*Defendants.* | : | Civil Action No. |

**CONSENT TO REMOVAL**

I, JENNA HUDSON, have been named as a Defendant in this action. I consent to the removal of this suit from the Supreme Court of the State of New York, County of New York (Index No. 651121/2016) to the United States District Court for the Southern District of New York.

April 4, 2016.

Respectfully submitted,

JENNA HUDSON

[Type text]

Case 1:16-cv-02523-LGS Document 1-6 Filed 04/05/16 Page 1 of 12

# Exhibit 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- x

CMGRP, INC.,

Plaintiff,

-against-

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,

Defendants.

---------------------------------------- x

Index No. 2016/ 651121

**SUMMONS**

Date Filed:

Plaintiff designates New York County as the place of trial based on Plaintiff's County of Residence

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action within twenty days after the service of this Summons, exclusive of the day of service or within thirty days after service is completed if the Summons is not personally delivered to you within the State of New York. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
March 3, 2016

SEYFARTH SHAW LLP

By: */s/ Robert S. Whitman*
Robert S. Whitman, Esq.
rwhitman@seyfarth.com
John W. Egan, Esq.
jegan@seyfarth.com

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

*Attorneys for Plaintiff*

Case 1:16-cv-02523-LGS Document 1-6 Filed 04/05/16 Page 3 of 12

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** NEW YORK

-----------------------------------------------------------------x

CMGRP, INC.

Plaintiff/Petitioner,

- against -

Index No. 651121/2016

AGENCY FOR THE PERFORMING ARTS, INC. et al.

Defendant/Respondent.

-----------------------------------------------------------------x

## NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

**Parties not represented by an attorney: Unrepresented litigants are exempt from e-filing. They can serve and file documents in paper form and must be served with documents in paper form.** However, an unrepresented litigant may participate in e-filing.

Case 1:16-cv-02523-LGS Document 1-6 Filed 04/05/16 Page 4 of 12

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efile-unrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 3/4/2016

Signature

John W. Egan
Name

Seyfarth Shaw LLP
Firm Name

620 Eighth Avenue, New York, N.Y. 10018
Address

212 218-5500
Phone

jegan@seyfarth.com
E-Mail

To: Agency for the Performing Arts, Inc.
Maggie Gallant, Sheila Munguia and
Jenna Hudson

9/3/15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- x

CMGRP, INC.,

Plaintiff,

-against-

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,

Defendants.

---------------------------------------- x

Index No. 2016/651121

**ACKNOWLEDGMENT OF SERVICE**

Bodker, Ramsey, Andrews, Winograd & Wildstein, P.C., attorneys of record for Defendants Agency for the Performing Arts, Inc., Maggie Gallant, Sheila Munguia, and Jenna Hudson ("Defendants"), hereby acknowledges their authorization to accept service of the Summons, Complaint, and Notice of Commencement of Action Subject to Mandatory Electronic Filing in the above-captioned action, filed on behalf of Plaintiff CMGRP, Inc., and that service was made on March 7, 2016.

Dated: New York, New York

March 11, 2016

BODKER, RAMSEY, ANDREWS, WINOGRAD & WILDSTEIN, P.C.

By: ____________________
Harry J. Winograd, Esq.
Robert E. Rigrish, Esq.
One Securities Centre
3490 Piedmont Road
Suite 1400
Atlanta, GA 30305
Tel. (404) 351-1615

*Attorneys for Defendants*

25224386v.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------x

CMGRP, INC.,

Plaintiff,

-against-

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, and JENNA HUDSON,

Defendants.

---------------------------------------x

Index No. 2016/651121

**STIPULATION**

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned counsel for the parties, that the time for Defendants to answer or otherwise respond to the Complaint in the above-captioned action is extended up to and including April 11, 2016.

Dated: March 10, 2016

**SEYFARTH SHAW LLP**

By:__________________
Robert S. Whitman
John W. Egan
620 Eighth Avenue
New York, New York 10018
212-218-5500
*Attorneys for Plaintiff*

**BODKER, RAMSEY, ANDREWS, WINOGRAD & WILDSTEIN, P.C**

By:__________________
Harry J. Winograd, Esq.
Robert E. Rigrish, Esq.
One Securities Centre
3490 Piedmont Road
Suite 1400
Atlanta, GA 30305
(404) 351-1615
*Attorneys for Defendants*

25264833v.1

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840 (7/2012)

**For Court Clerk Use Only:**

IAS Entry Date

Judge Assigned

RJI Date

**New York Supreme COURT, COUNTY OF New York**

**Index No: 651121/2016** **Date Index Issued: 03/04/2016**

**CAPTION:** Enter the complete case caption. Do not use et al or et ano. If more space is required, attach a caption rider sheet.

CMGRP, INC.

**Plaintiff(s)/Petitioner(s)**

**-against-**

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, JENNA HUDSON

**Defendant(s)/Respondent(s)**

## NATURE OF ACTION OR PROCEEDING:

Check ONE box only and specify where indicated.

**MATRIMONIAL**

☐ Contested

**NOTE:** For all Matrimonial actions where the parties have children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum**. For Uncontested Matrimonial actions, use RJI form UD-13.

**TORTS**

☐ Asbestos
☐ Breast Implant
☐ Environmental:
☐ Medical, Dental, or Podiatric Malpractice
☐ Motor Vehicle
☐ Products Liability:
☐ Other Negligence:
☐ Other Professional Malpractice:
☐ Other Tort:

**COMMERCIAL**

☐ Business Entity (including corporations, partnerships, LLCs, etc.)
☒ Contract
☐ Insurance (where insurer is a party, except arbitration)
☐ UCC (including sales, negotiable instruments)
☐ Other Commercial:

**NOTE:** For Commercial Division assignment requests [22 NYCRR § 202.70(D)], complete and attach the **COMMERCIAL DIV RJI Addendum**.

**REAL PROPERTY:** How many properties does the application include?

☐ Condemnation
☐ Mortgage Foreclosure: ☐ Residential ☐ Commercial
Property Address:

**NOTE:** For Mortgage Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied condominium, complete and attach the **FORECLOSURE RJI Addendum.**

☐ Tax Certiorari - Section: Block: Lot:
☐ Tax Foreclosure
☐ Other Real Property:

**OTHER MATTERS**

☐ Certificate of Incorporation/Dissolution [see **NOTE** under Commercial]
☐ Emergency Medical Treatment
☐ Habeas Corpus
☐ Local Court Appeal
☐ Mechanic's Lien
☐ Name Change
☐ Pistol Permit Revocation Hearing
☐ Sale or Finance of Religious/Not-for-Profit Property
☐ Other:

**SPECIAL PROCEEDINGS**

☐ CPLR Article 75 (Arbitration) [see **NOTE** under Commercial]
☐ CPLR Article 78 (Body or Officer)
☐ Election Law
☐ MHL Article 9.60 (Kendra's Law)
☐ MHL Article 10 (Sex Offender Confinement-Initial)
☐ MHL Article 10 (Sex Offender Confinement-Review)
☐ MHL Article 81 (Guardianship)
☐ Other Mental Hygiene:
☐ Other Special Proceeding:

## STATUS OF ACTION OR PROCEEDING:

Answer YES or NO for EVERY question AND enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons w/notice been filed? | ☒ | ☐ | If yes, date filed: 03/03/2016 |
| Has a summons and complaint or summons w/notice been served? | ☒ | ☐ | If yes, date served: 03/07/2016 |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: |

**NATURE OF JUDICIAL INTERVENTION:** Check ONE box only AND enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Note of Issue and/or Certificate of Readiness
- ☐ Notice of Medical, Dental, or Podiatric Malpractice — Date Issue Joined:
- ☐ Notice of Motion — Relief Sought: — Return Date:
- ☐ Notice of Petition — Relief Sought: — Return Date:
- ☐ Order to Show Cause — Relief Sought: — Return Date:
- ☐ Other Ex Parte Application — Relief Sought:
- ☐ Poor Person Application
- ☒ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other:

**RELATED CASES:** List any related actions. For Matrimonial actions, include any related criminal and/or Famiy Court cases. If additional space is required, complete and attach the **RJI Addendum**. If none, leave blank.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING AR... | 1:16-cv-00689-CC | USDC NORTHERN DISTRICT OF GEORGIA | Hon. Clarence Cooper | Declaratory judgment action addressing enforcea... |
| | | | | |
| | | | | |

**PARTIES:** For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in space provided. If additional space is required, complete and attach the **RJI Addendum**.

| Un-Rep | **Parties:** List parties in caption order and indicate party role(s) (e.g., defendant; 3rd-party plaintiff). | **Attorneys and/or Unrepresented Litigants:** Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case. For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| ☐ | Name: CMGRP, INC.<br>Role(s): Plaintiff/Petitioner | JOHN EGAN, Seyfarth Shaw LLP, 620 Eighth Avenue , New York, NY 08550, 212-218-5291, jegan@seyfarth.com | NO | N/A |
| ☐ | Name: AGENCY FOR THE PERFORMING ARTS, INC.<br>Role(s): Defendant/Respondent | Harry Winograd, Bodker, Ramsey, Andrews, Winograd & Wildstein, P.C., 3490 Piedmont Road, Suite 1400, Atlanta, GA 30305, 404-351-1615, HWinograd@brawwlaw.com | NO | Unknown |
| ☐ | Name: GALLANT, MAGGIE<br>Role(s): Defendant/Respondent | Harry Winograd, Bodker, Ramsey, Andrews, Winograd & Wildstein, P.C., 3490 Piedmont Road, Suite 1400, Atlanta, GA 30305, 404-351-1615, HWinograd@brawwlaw.com | NO | Unknown |
| ☐ | Name: MUNGUIA, SHEILA<br>Role(s): Defendant/Respondent | Harry Winograd, Bodker, Ramsey, Andrews, Winograd & Wildstein, P.C., 3490 Piedmont Road, Suite 1400, Atlanta, GA 30305, 404-351-1615, HWinograd@brawwlaw.com | NO | Unknown |
| ☐ | Name: HUDSON, JENNA<br>Role(s): Defendant/Respondent | Harry Winograd, Bodker, Ramsey, Andrews, Winograd & Wildstein, P.C., 3490 Piedmont Road, Suite 1400, Atlanta, GA 30305, 404-351-1615, HWinograd@brawwlaw.com | NO | Unknown |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.**

**Dated:** 03/14/2016

JOHN W EGAN
**SIGNATURE**

4459046
**ATTORNEY REGISTRATION NUMBER**

JOHN W EGAN
**PRINT OR TYPE NAME**

*This form was generated by NYSCEF*

# Request for Judicial Intervention Addendum

UCS-840A (7/2012)

New York Supreme COURT, COUNTY OF New York

**Index No:** 651121/2016

**For use when additional space is needed to provide party or related case information.**

**PARTIES:** For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in "Attorneys" space.

**RELATED CASES:** List any related actions. For Matrimonial actions, include any related criminal and/or Famiy Court cases.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC. v. CMGRP, INC. d/b/a ROGERS & COWAN | 1:16-cv-00689-CC | USDC NORTHERN DISTRICT OF GEORGIA | Hon. Clarence Cooper | Declaratory judgment action addressing enforceability of covenants in Defendant Gallant's employment contract with Plaintiff CMGRP, Inc. |

*This form was generated by NYSCEF*

**SUPREME COURT OF THE STATE OF NEW YORK**

UCS-840C
3/2011

**COUNTY OF New York**

CMGRP, INC.

**Plaintiff(s)/Petitioner(s)**

**-against-**

AGENCY FOR THE PERFORMING ARTS, INC., MAGGIE GALLANT, SHEILA MUNGUIA, JENNA HUDSON

**Defendant(s)/Respondent(s)**

x

**Index No: 651121/2016**

**RJI No. (if any)**

## COMMERCIAL DIVISION

### Request for Judicial Intervention Addendum

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

- ☒ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)
- ☐ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)
- ☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only
- ☐ Shareholder derivative actions — without consideration of the monetary threshold
- ☐ Commercial class actions — without consideration of the monetary threshold
- ☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions
- ☐ Internal affairs of business organizations
- ☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters
- ☐ Environmental insurance coverage
- ☐ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)
- ☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold
- ☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:

1000000.00

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:

Defendants breached their contractual duties not to: Contact, service, or solicit Plaintiffs clients; Solicit Plaintiffs employees; and (3) misappropriate Plaintiffs confidential and proprietary information.

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

Defendants have not filed a responsive pleading.

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) and (c).**

**Dated:** 03/14/2016

JOHN W EGAN
**SIGNATURE**

JOHN W EGAN
**PRINT OR TYPE NAME**

*This form was generated by NYSCEF*

**From:** Egan, John
**To:** Robert Rigrish
**Cc:** Harry Winograd; Whitman, Robert S.
**Subject:** FW: 651121/2016 CMGRP, INC. - v. - AGENCY FOR THE PERFORMING ARTS, INC. et al
**Date:** Thursday, March 17, 2016 11:00:04 AM

Rob, please see the below correspondence from the Court regarding the preliminary conference.

Best,

**John W. Egan** | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-5291 | Fax: +1-917-344-1332
jegan@seyfarth.com | www.seyfarth.com

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.

**From:** Julie Guadalupe [mailto:jguadalu@nycourts.gov]
**Sent:** Thursday, March 17, 2016 10:34 AM
**To:** Egan, John; Whitman, Robert S.; HWinograd@brawwlaw.com
**Subject:** RE: 651121/2016 CMGRP, INC. - v. - AGENCY FOR THE PERFORMING ARTS, INC. et al

Good Morning

A Preliminary Conference is scheduled for May 31, 2016 @ 10:30am before the Hon. O. Peter Sherwood in Part 49 located at 60 Centre Street, Room 252.

The parties must comply with all the requirements of the Commercial Division rules, as well as the practices and procedures of Part 49.

Any party receiving this email message is responsible for notifying any appearing parties or their counsel who have not E-filed appearances.
To E-file an appearance or add appearing counsel or parties to the court's email contact list, please call the court's Electronic Filing Resource Center at 646-386-3033 or visit EFile@nycourts.gov

Thank you.

*Julie Guadalupe*
*Part Clerk to the*
*Hon. O. Peter Sherwood*
*New York County Supreme Court*
*60 Centre Street (Part 49)*
*New York, NY 10007*
*(646) 386-4033*
*jguadalu@nycourts.gov*