UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MAGGIE GALLANT and AGENCY FOR THE PERFORMING ARTS, INC. | ) | |
| Petitioners, | ) | |
| v. | ) | CIVIL ACTION NUMBER: 1:16-cv-00689-TCB |
| CMGRP, INC. d/b/a ROGERS & COWAN, | ) | |
| Respondent. | ) | |

**PETITIONERS' CONSOLIDATED REPLY BRIEF ON MOTION TO REMAND AND MOTION TO AMEND AND ENTER DECLARATORY JUDGMENT**

Currently pending before this Court are (1) Petitioners Maggie Gallant and Agency for the Performing Arts, Inc. ("APA")'s Motion to Remand (Docket No. 7, opposed at Docket No. 20) this action to the Superior Court for Fulton County, Georgia for lack of subject matter jurisdiction; (2) Petitioners' Motion to Amend and Enter Declaratory Judgment (Docket No. 13, opposed at Docket No. 21), if this Court has subject matter jurisdiction; and Respondent CMGRP, Inc. ("CMGRP")'s Motion to Dismiss or Stay (Docket No. 4, opposed by Petitioners at Docket No. 12). As explained in earlier filings and in this brief, see II.B, *supra*, the Court should, first, grant Petitioners Motion to Remand or exercise its discretion

and abstain, remanding the case to Fulton County Superior Court for resolution of the issues presented by Petitioners' Motion for Entry of a Declaratory Judgment (Docket No. 13). If it does not remand this case, the Court should deny Respondent CMGRP's Motion to Dismiss or Stay (Docket No. 4) and instead grant Petitioner's Motion to Amend and Grant Petitioners' requested declaratory judgment (Docket No. 13).

As CMGRP recognizes (Doc. No. 20 at 4), "the key issue in this case is whether the restrictive covenants (against Gallant) . . . are enforceable." Whether the covenants (Doc. No. 1-3 at ¶¶ 7.02, 7.05, and Doc. No. 4-1 at Ex. 7, CMGRP's New York Complaint, at ¶¶ 25, 26, 28) are enforceable (in whole or in part) against Gallant, a Georgia resident working for APA in Georgia, depends on whether those covenants are considered under Georgia law. CMGRP's response (Docket No. 21) tacitly admits the covenants are unenforceable under Georgia law. Instead, CMGRP seeks to avoid the "first filed" rule to have the covenants considered under New York law, in its later-filed New York action, where the covenants may be enforceable to some degree under New York's application of the "blue pencil" or judicial reformation doctrine.

The authority dispositive of this case, *Manuel v. Convergys Corp.*, N.D.Ga. No. 1:04-1279-MHS (October 14, 2004)(copy at Docket No. 12-1), *aff'd*, 430 F.3d

1132 (11th Cir. 2005), bars CMGRP's effort to avoid application of Georgia law to Gallant's Georgia employment. The Superior Court of Fulton County, Georgia, where this dispute was first filed on January 27, 2016, should decide this dispute. To avoid this result, CMGRP engaged in multiple acts of what it calls "procedural fencing." First, on March 3, 2016, it filed an action in New York state court, joining as a nominal defendant a New York resident (Sheila Munguia) in an effort to avoid Federal diversity jurisdiction putting this dispute on all fours with *Manuel*. See Docket No. 4-1 at Ex. 7 (CMGRP's New York complaint). Minutes later, it removed this Georgia case to this court, despite the absence of any evidence of $75,000 being in controversy, the condition for federal subject matter jurisdiction over Petitioner's Georgia Declaratory Judgment Act, O.C.G.A. § 9-4-2 Petition (Docket No. 1-1). Third, CMGRP moved to dismiss or stay the Georgia action it had just removed. Docket No. 4. Finally, CMGRP served discovery requests in the New York action seeking production of documents to establish the value of business clients moved to APA in a belated effort to establish $75,000 in controversy. See Docket No. 21 at 3, n. 2. Eleventh Circuit authority directs that this case be remanded for consideration and resolution in Fulton County Superior Court, if this Court finds that it lacks subject matter jurisdiction (or, alternatively, exercises its limited discretion to not exercise its Federal Declaratory Judgment

Act, 28 U.S.C. § 2201, jurisdiction).[1] If not, the "first filed" rule and Georgia's public policy interests in having employment in the state considered under Georgia law direct that the Court deny CMGRP's Motion (Docket No. 4) and grant Petitioner's Motion to Amend and Grant Petitioners Declaratory Judgment Relief (Docket No. 13).

## I. **CMGRP Has Not Proven $75,000 In Controversy.**

CMGRP's Response (Docket No. 20) to Petitioners Motion to Remand (Docket No. 7 and 7-1) recognizes that the amount in controversy on the Petition (Docket No. 1-1) must be "measured from the [petitioners] perspective," Docket No. 20 at 3, yet immediately ignores this binding principle. CMGRP substitutes Respondent CMGRP's 2015 gross revenues from two clients who took their business to APA as the alleged measure of value to APA and Gallant in the Petition's declaratory judgment relief, facilely claiming "Stated simply, CMGRP's loss is Plaintiff's gain." *Id*., Docket No. 20 at 4; 20-2 at ¶ 4-5 (Franken Decl.). This turns "plaintiff's perspective" on its head, substituting Respondent's 2015 gross revenues into speculation of the gross revenue APA might receive from the clients in 2016. This falls far short of establishing the value (profit and/or

[1] See II.B, *supra*, addressing abstention doctrine and how it supports a remand to Fulton County Superior Court rather than a dismissal or stay enabling CMGRP's strategic efforts to subject Georgian Gallant to adverse New York law.

bonus/commission) from that business that APA and Gallant might realize, depending on the actual revenue in 2016, APA's profit on it, and Gallant's bonus or commissions (if any) at APA.[2]

Of course, "Plaintiff's" prospective 2016 monetary benefit from the Declaration Petitioners seek is not CMGRP's gross receipts in 2015 from two clients. If "Plaintiff" is Gallant, the monetary benefit (if any) from the declaratory relief sought would be the difference, if any, in compensation she might receive from APA servicing the two former CMGRP clients' business in 2016 if APA received that business as a result of Gallant's breach of any legally enforceable covenants. See *Wilson v. Benyon Sports Surfaces*, 2011 WL 6014666, *2-3 (N.D. Ga. 1L11-cv-2002-RWS, December 1, 2011)("the value of the injunctive relief requested would have to be measured by comparing what plaintiffs could earn while complying with the restrictive covenants to what they could earn without having to comply" (*citation omitted*)). CMGRP's 2015 gross receipts from the two clients bears no relation to what Gallant might earn at APA, and any effort to

[2] CMGRP cannot now engage in discovery in an effort to establish the value of the two clients' business in 2016 to APA (profit) and Gallant (bonus or commission, if any). *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215-16, 1218 (11th Cir. 2007). As part of its "procedural fencing," in a transparent effort to avoid *Lowery*, CMGRP served production requests soon after filing its New York action, seeking information from which it might claim the jurisdictional amount in controversy. However, CMGRP neglected to include a requested production date in its CPLR 3120 production requests, as required by that New York rule, making the requests meaningless.

calculate an amount in controversy based on CMGRP's 2015 gross receipts is, at best, purely speculative. See, e.g., *Moorad v. Affordable Housing Systems*, 2012 WL 162289 (N.D. Ga. No. 1-11-cv-RWS January 18, 2012 Order)(Plaintiff's salary at his new, competitive employer "concrete evidence of the value of the injunction . . . if Plaintiff had attempted to base his amount in controversy requirement on his prior salary with [respondent] AIS, diversity would not be established").[3]

Respondent's attempt here fails. CMGRP's claimed 2015 gross revenues from these two clients is akin to considering Gallant's salary at CMGRP and an assumption that she made more at APA as establishing an amount in controversy, a proposition rejected in *Moorad*, *Wilson*, 2011 WL 6014666 at *3, and the other authorities cited in Petitioner's earlier brief (Docket No. 7-1 at 9-10). As it does

---

[3] Respondent (Docket No. 20 at 9) misstates *dicta* in *Moorad* to suggest that respondent AIS's later-filed, truly parallel suit in Massachusetts was considered by Judge Story in determining the amount in controversy. In fact, Judge Story rejected respondent AIS's "strategic" amendment of its Massachusetts suit attempting to avoid Moorad's "first filed" federal suit as evidence of the amount in controversy. In *Moorad*, Mr. Moorad filed suit in this Court on August 4, 2011 and sought a TRO, serving respondent AIS on August 9, 2011. AIS almost immediately sued Moorad in state court in Massachusetts (on August 11, 2011 – see Moorad Docket, N.D.Ga. No. 1:11-cv-2580-RWS, at 13-2, p. 10 of 56) in a truly parallel suit [against Moorad only]. As with CMGRP here, respondent AIS sought dismissal of Moorad's "first filed" suit (a week before AIS's second filed, parallel Massachusetts state action), engaging in "procedural fencing," the "strategic" amendment in Massachusetts to delete its unenforceable [under Georgia law] noncompetition term in hopes of avoiding application of Georgia law to a Georgia resident. Judge Story rejected this effort, applying *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1242 (11th Cir. 2005) to find that Moorad had shown irreparable harm supporting entry of a TRO.

with *Moorad*, CMGRP (Docket No. 20 at 5) reads too much into *Molex Co. v. Andress*, F.Supp.2d 1189, 1197 (S.D. Ala. 2011). In that trade secrets case, the court, without reference to any authority, simply concluded that it “is reasonable to consider the value of plaintiffs’ past sales . . . in determining how much defendant’s alleged misuse of trade secrets has cost plaintiffs.” The *Molex* court went on to note plaintiff’s ability to recover “profits . . . conferred by the misappropriation [on proof of gross revenue, deductible expenses, and deduction for profit attributable to factors other than the trade secret],” as well as attorney fees and exemplary damages under the Alabama statute at issue, before concluding that “it is more likely true than not true” that the amount in controversy exceeds $75,000.” *Molex* does not support the proposition for which CMGRP cites it (Docket No. 20 at 5): that CMGRP’s 2015 gross revenues from the two clients “is an appropriate measure for the amount in controversy.”

Petitioner APA's monetary benefit from the declaration sought is not CMGRP's 2015 gross receipts from clients who chose to move their publicity business to APA. At best, its monetary benefit is the net profit it might recognize from whatever business those clients send APA’s way from December 5, 2015 to December 4, 2016 (the temporal life of the covenants), assuming CMGRP can prove that APA received the business because Gallant breached an enforceable

covenant. See, e.g. *Witty v. McNeal Agency, Inc*., 239 Ga. App. 554 (1999)(proof and measure of lost profits); *Building Materials Wholesale, Inc. v. Triad Drywall, LLC*, 287 Ga. App. 772, 776-77 (2007)(insufficient evidence of lost profits absent evidence of anticipated expenses). Of course, such new business and the profit APA might earn from it is, by its nature, entirely speculative, and CMGRP offers no basis for determining even CMGRP's profit margin on its 2015 business from the unnamed clients, much less what APA might realize on new, distinct contracts with 2016 revenue.

CMGRP fails to meet its burden of proof ($75,000 in controversy) using Petitioners' $60,000 settlement offer. If anything, the offer proves that the value to Petitioners falls short of the jurisdictional threshold. See Docket No. 7-1. Counsel’s settlement discussions did not include a “conce[ssion] that the removing party’s loss of revenue approximately tracked the revenue gained by the opposing party” or ‘admi[ssion] that CMGRP’s historical revenue figures correlate to the revenues that APA will receive if their claims here are successful,” as CMGRP claims (Docket No. 20 at 6). In those discussions, completed before CMGRP removed this case, Mr. Winograd did not know what CMGRP now claims its gross revenues from the two clients were in 2015, much less “concede that [CMGRP’s 2015 revenue] approximately tracked the revenue gained by [APA].” *Id.* Docket

No. 20 at 6; compare Docket No. 22-1, Winograd Decl. at ¶ 4. The evidence identified by CMGRP does not support CMGRP's claim. Compare Docket No. 20-1 at ¶ 2-3 to Docket No. 20 at 6. Instead, Mr. Winograd's initial offer to pay CMGRP 10% of APA's revenue from the two clients during the one year restriction CMGRP claims on Gallant did not speculate on what that revenue might be. Compare Docket No. 22-1, Winograd Decl. at ¶ 3 and Docket No. 20-1, Whitman Decl. at ¶ 3. When CMGRP rejected that offer, requesting a stated settlement amount (Docket No. 22-1, Winograd Decl. at ¶ 5), on February 26, 2016 (a week before CMGRP's removal), Mr. Winograd conveyed the $60,000 offer. Consistent with the earlier settlement discussions, this was APA's speculative estimate at the time of 10% of the revenue it might receive from the two former CMGRP clients during the Gallant 'restriction' year, *i.e.*, merely a speculative estimate of APA's possible profit during that time period. Mr. Whitman never identified CMGRP's revenue or claimed profits in 2015 from the two clients; accordingly, CMGRP's 2015 gross revenue and profit margin on the business was in no way a basis for Petitioners' settlement offer. See Winograd Decl. at ¶ 5, 6.

What CMGRP claims for value in its later filed New York suit (Docket No. 4-1 At Ex. 7; see also Docket No. 20 at 2-3, n. 2; 7 & n. 6) is simply irrelevant to the value of the declaration sought here, viewed, as legally required, from

Petitioners' perspective, at the time the Petition was filed (January 27, 2016) or removed. When the New York defendants (including Petitioners here) removed that later-filed case to the Southern District of New York, they did not "contend . . . that the amount in controversy . . . exceeds $75,000," as CMGRP falsely claims (Docket No. 20 at 3, n. 2). Instead the New York removal petition simply notes CMGRP's (as plaintiff in New York) stated claim of damages in the New York case (S.D.N.Y. No. 1:16-2523 Docket No. 1 at ¶ 5: "Plaintiff's [CMGRP's New York] Complaint asserts that the amount in controversy exceeds $75,000."

The *Moorad* case (Docket No. 20 at 9), as noted (*infra*, note 3), offers no support for Respondent's contention for jurisdiction that CMGRP's gross revenues for the two clients in 2015 evidence the monetary benefit to APA or Gallant, from Petitioners' perspective, of this business in 2016. Lacking authority in the Eleventh Circuit, Respondent reaches across the country to Oregon for support for its attempt to assert that CMGRP's claims in its later-filed New York complaint evidences the value of Petitioners' declaratory judgment action to Petitioners. Docket No. 20 at 7-8, citing *Biotronik, Inc. v. Medtronic USA, Inc*., 840 F. Supp. 2d 1251 (D. Ore. 2012). Of course, such decisions have no precedential value. *Camreta v. Greene*, 563 U.S. 692, 131 S.Ct. 2020, 2033 n. 7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)),

*Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 131 S.Ct. 2527, 2540 (2011). Further, the Ninth Circuit (binding authority over Oregon district courts) does not follow the Eleventh Circuit's "plaintiff's perspective" caselaw. See *Union Pacific R. Co. v. Mower*, 219 F.3d 1069, 1071 n. 1 (9th Cir. 2000); *Biotronik*, 840 F.Supp.2d at 1257.

The court in *Biotronik* measured Biotronik's potential liability from a liquidated damages provision in employee Carmichael's Medtronic employment agreements, found by the Court to be "a reasonable estimate of the damages likely to be incurred by Medtronic if Biotronik tortiously interfered . . ." *Id.* at 1257-58. Under Ninth Circuit law, this recourse to a respondent's potential loss (rather than the monetary value to petitioner) may be appropriate. It is not under the binding and dispositive Eleventh Circuit authorities.

CMGRP cannot meet its burden of establishing $75,000 in controversy in this action. The Court should grant Petitioners' Motion to Remand (Docket No. 7) and remand this case to the Superior Court for Fulton County to consider and decide Petitioners' declaratory judgment action.

## II. *Manuel*, the "First Filed" Rule, and Abstention.

### A. The "First Filed" Rule and *Manuel* Are Dispositive.

Authorities to the contrary (Docket No. 12 at pp. 4-17), Respondent continues to assert that the "first filed" rule, as applied in the dispositive *Manuel* decision, 430 F.3d at 1135-39, somehow does not apply. CMGRP claims (contrary to the authorities) that the rule does not apply to a "first filed" declaratory judgment action followed by state court action.

The "first filed" rule is a long-established element of Federal common law, and applies regardless of whether the second-filed suit is in a state court or removed to a federal court. "When a state court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it to the exclusion of the other, until its duty is fully performed and jurisdiction involved is exhausted; and this rule applies alike in both civil and criminal cases." *In re Georgia Power Co.*, 89 F.2d 218, 221 (5th Cir. 1937), quoting *Harkrader v. Wadley*, 172 U.S. 148, 163 (1898); see also *Rickey Land & Cattle Co. v. Wood*, 218 U.S. 258, 262 (1910)("We are of the opinion . . . the court first seised should proceed to termination without interference, on the principles now well settled as between the courts of the United States and of the states"). The principle was well established when Congress first codified Federal declaratory

judgment procedures in 1934. "The [1934] Declaratory Judgment Act was not devised to deprive courts of their equity powers or their freedom to withhold relief upon established equity principles. It only provided a new form of procedure for the adjudication of rights in conformity with these principles." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299-300 (1943). Of course, it was those equity powers, which "the Judiciary Acts had already conferred," *Id.* at 299, that Justice Holmes explained in applying the "first filed" principle in *Rickey* to recognize the precedence of a Nevada federal equitable action over a later-filed, competing California state court action twenty-four years before an earlier version of the Federal Declaratory Judgment Act became law.[4]

Under the federal common law "first filed" rule, then, that *Manuel* ultimately dealt with "two concurrent federal actions" (Docket No. 19 at 3; *Manuel*, 430 F.3d at 1135) is a distinction without a difference. See *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)("It should

[4] This historical review is necessitated by CMGRP's attempt to distinguish *Rickey*. (Docket No. 19 at 5, n. 2). To be sure, *Rickey* could not describe its first-filed equitable claim as a declaratory judgment action, since it would be twenty-four years before Congress codified the existing federal equity practice. Its context may differ, but the operative principle is the same: CMGRP, having removed this action to Federal court, subjected Petitioners' declaratory judgment action to federal common law, including the federal first-filed rule and the current vehicle for equitable relief (28 U.S.C. § 2201). As here, the second-filed state action in *Rickey* (under California law; here, CMGRP's attempt to apply New York law to a Georgian, Gallant, in New York) was precluded by the first-filed federal suit (here, by CMGRP's removal to this Court; in *Rickey*, the first filed Nevada federal equitable action).

make no difference whether the competing courts are both federal courts or a state and federal court with undisputed concurrent jurisdiction”). Absent proof of “compelling circumstances,” the court where action was first filed decides the case. *Id*.

Of course, *Manuel* did not start out as “two concurrent federal actions,” and neither did this dispute. CMGRP’s later-filed New York action (Docket No. 4-1 at Ex. 7), we believe, was filed with a fraudulently joined non-diverse defendant (Munguia) for the purpose of avoiding “two concurrent federal actions” and providing at least the appearance of an argument to avoid the dispositive effect of *Manuel*. In *Manuel,* Convergys, like CMGRP, initially brought suit in state court (Hamilton County, Ohio), and Manuel removed it, presenting the “two concurrent federal actions.” See Docket No. 12 at 4-6. Our facts give rise to “the strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.” *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa*., 713 F.3d 71, 78 (11th Cir. 2013); *see also Southern Mills, Inc. v. Nunes*, 2013 WL 1340385 (N.D. Ga. 2013), aff’d, 586 Fed. Appx. 702 (11th Cir. 2014)(applying first-filed rule).

CMGRP relies (Docket No. 19 at 4) on a series of non-precedential Florida district court decisions following a district court insurance coverage case, *Allstate*

*Ins. Co. v. Clohessy*, 9 F.Supp.2d 1314 (M.D. Fla. 1998), instead of exploring the relevant Eleventh Circuit authorities whose antecedents stretch back to *Rickey*. See Docket No. 12 at 8-9; *compare Mt. Hawley Ins. v. Sarasota Residences, LLC*, 714 F.Supp.2d 1176, 1181 (M.D. Fla. 2010)("a careful reading of *Clohessy* and the case law it cites suggests that [the first filed rule] applies to competing claims in separate *federal* courts ...").[5] To be sure, even the dicta in *Manuel* (understandable, given its context) refers to competing, pending federal actions. *Manuel*, 430 F.3d at 1135. This is the same situation presented by the disputes between CMGRP, Gallant and APA.

### B. <u>CMGRP's Arguments Support Remand to Fulton Superior Court On Abstention Doctrine Grounds</u>.

While clearly not CMGRP's intent, its invocation of abstention doctrine principles supports Petitioners' Remand Motion (Docket No. 7), putting the parties' dispute back in Fulton County Superior Court. If this Court has subject matter jurisdiction, but exercises its limited discretion not to address Petitioners' declaratory judgment claims, to what court should it defer? The first filed rule and abstention doctrine point back to Fulton County Superior Court, and not to

[5] The one Eleventh Circuit case CMGRP cites is a per curiam affirmance of a dismissal in light of a pending parallel state court proceedings *in the same state* as within the district court's discretion. See *Triple S Refining Corp. v. Mount Canaan Full Gospel Church*, 254 Fed. Appx. 762, 763 (11th Cir. 2007).

CMGRP's later-filed, broader case against Petitioners and two additional defendants.[6]

CMGRP (Docket No. 19 at 5) misrepresents Petitioners' position (Docket No. 12 at 12-13). We do not contend that *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), applying the *Brillhart/Wilton* abstention doctrine, "applies only to insurance disputes." Instead, what that doctrine does not apply to, at least as CMGRP construes *Ameritas*, given *Manuel*, 430 F.3d at 1135-37,[7] is the dispute before this Court: a strategic attempt by CMGRP to have New York law applied to a Georgian working in Georgia, where the public policy applicable to the covenants CMGRP seeks to enforce renders the covenants void *ab initio*. See Docket No. 13-1.[8]

---

[6] While there is no clear test for deciding whether two cases are parallel, "if there is any substantial doubt about whether two cases are parallel, the court [considering the declaratory judgment action, *i.e.*, this Court] should not abstain." *Acosta v. James A. Gustino, P.A.*, 478 Fed. Appx. 620, 622 (11th Cir. 2012).

[7] CMGRP's string cite to district court decisions from other circuits, decided under other circuits' law and having no precedent value (Docket No. 19 at 7), add nothing to consider. For example, *Sabol-Krutz v. Quad Electronics, Inc.*, 2015 WL 4095584 (E.D. Calif. 2015) is in direct conflict with the binding precedent of *Manuel*, 430 F.3d at 1135-37.

[8] One case CMGRP cites (Docket No. 19 at 5) explains (as do Petitioners at Docket No. 12, pp. 16-17) how *Ameritas* might apply outside the insurance coverage context, and favor remand of this case to Fulton Superior Court. In *Royal Caribbean Cruises, Ltd. v. Whitefield*, 664 F.Supp. 2d 1270 (M.D. Fla. 2009), the court carefully explained how the *Ameritas* and other circuits' "well established standards" in insurance coverage cases are modified to address the "unique" situation courts face when a declaratory judgment is sought on the issue of "maintenance and cure benefits" in the face of a pending Jones Act claim in state court (again, in the same state, Florida). The *Whitefield* court evaluated these factors and dismissed the federal declaratory judgment claim in favor of the pending Florida state case.

The *Brillhart/Wilton* abstention doctrine began with a basic premise: A district court, faced with invocation of federal declaratory judgment jurisdiction in the context of a pending state court action involving generally the same parties and issues, should exercise its discretion in deciding whether to retain jurisdiction. In *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), the district court had not exercised that discretion, deferring to a later-filed Missouri garnishment proceeding without considering whether the insurance coverage dispute could or would be addressed in the Missouri garnishment case.[9] "If the lower courts had found that under Missouri law the respondent's claim could not adequately be tested in the pending garnishment proceeding . . . and had taken jurisdiction of this suit for a declaratory judgment, we would not disturb such a finding." *Id*. at 496-97. CMGRP misstates the facts and holding in *Brillhart*. In fact, the Court ordered "The cause should be remanded to the District Court in order that it may properly exercise its discretion ...." *Id*. at 498.

If we apply *Brillhart's* guidance to our facts, it supports either of two results: this Court retaining jurisdiction and granting Petitioners' Motion for a declaratory judgment (Docket No. 13), while denying Respondent's Motion to Dismiss or Stay (Docket No. 4), or exercising its discretion and remanding this case to Fulton

[9] *Brillhart*, for whatever reason, did not present the Supreme Court with the "first filed" issue decided decades earlier in *Rickey* and *Harkrader*.

County Superior Court (Docket No. 7). Here, we have clear indications that the New York courts will not "adequately test" Gallant's claim that Georgia law should apply to her Georgia employment, and therefore decide the "core question in this case" (Docket No. 20 at 4) under Georgia law, as required by Georgia public policy. Here, the state law is clear, as CMGRP tacitly[10] admits: New York courts will not apply Georgia law, and Georgia law and public policy apply and will not enforce CMGRP's restrictive covenants against Gallant. See Docket No. 13-1 at 7-20. The issue, then, is whether this Court or Fulton County Superior Court should decide this case.[11]

Contrary to CMGRP's arguments, this Court (or Fulton Superior Court, on remand) can settle the entire controversy between the parties, including claims added by CMGRP in the later-filed, non-parallel, action adding claims and two

[10] See Docket No. 21. CMGRP's response does not dispute that its restrictions on Gallant are void and unenforceable under the Georgia law applicable to agreements entered in 2008. CMGRP's passing attempt to claim that Georgia public policy interests, as applied to these agreements, have somehow dissipated (Docket No. 19 at 10 n. 3) has already been litigated and lost by a similarly situated foreign employer. See *Becham v. Synthes USA*, 482 Fed. Appx. 387 (11th Cir. 2012).

[11] CMGRP raises additional abstention principles favoring remand to Fulton Superior Court. *Sini v. Citibank, N.A.*, 990 F.Supp.2d 1370, 1376 (S.D. Fla. 2014)(Docket No. 19 at 4), raises the *Colorado River* abstention doctrine, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Application of its principles, particularly its elements 1, 3, and 6, support remand to Fulton Superior Court, if this Court does not exercise its discretion to retain jurisdiction, as the only "parallel" action, as well as (1 & 3) the first court with jurisdiction and (6) the only other court which will adequately protect the rights of all parties (particularly Gallant's right to have her claims considered under Georgia law). *Sini*, 990 F.Supp. 2d at 1376 (*citations omitted*).

additional defendants (Munguia and Hudson). As CMGRP acknowledges, vaguely, (Docket No. 19 at 14 and Docket No. 20 at 7), its claims against Gallant and APA are Fed.R.Civ.P. 13(a) compulsory counterclaims, which it is obliged to litigate here or in Fulton Superior Court. See *Warshawsky & Co. v. Arcada Nat'l Corp.*, 552 F.2d 1257 (7th Cir. 1977). Although not compulsory, CMGRP can meet its Fed.R.Civ.P. 1 party obligation to employ the rules to secure the just, speedy, and inexpensive determination of this and the claims it asserts in New York by pursuing its claims against Hudson and Munguia (if not simply a strategy to subject Gallant to New York law) in either this action under Fed.R.Civ.P. 19 or 20 or in Fulton Superior pursuant to O.C.G.A. § 9-11-19 or 20.[12] In addition, the 28 U.S.C. § 1404 transfer cases CMGRP cites (Docket No. 19 at 13), and § 1404 principles, as referenced in *Manuel*, 430 F.3d at 1135, support transfer of CMGRP's claims to this Court, honoring the first-filed rule.

---

[12] As CMGRP acknowledges (Docket No. 19 at 14), Munguia and Hudson, jointly represented by APA and Gallant's undersigned counsel, waive any objections to personal jurisdiction in Georgia. CMGRP may benefit from Georgia's favorable *lex loci* choice of law rule for at least some of its claims against parties other than Gallant. See Docket No. 12 at pp. 16-17; *Keener II*, 276 Ga. 808 (2003).

## III. If This Court Has Jurisdiction, It Should Grant Petitioners' Requested Declaratory Judgment Relief.

CMGRP's Response (Docket No. 21) to Petitioner's Motion for Leave to Amend and for Entry of a Declaratory Judgment (Docket No. 13) tacitly admits that, under Georgia law, the restrictive covenants in Gallant's Employment Agreement (Docket No. 1-3, at §§ 7.02, 7.05) and CMGRP's claimed Code of Conduct (Docket No. 4-1 at Ex. 7, ¶¶ 25, 26, 28) are void and unenforceable as to Gallant. The "procedural skirmishes," of Respondent's making, should not prevent or delay this Court from addressing (if it finds it has jurisdiction and denies Petitioners Motion to Remand, Docket No. 7) what CMGRP identifies as "the core question in this case . . . whether [Gallant's] restrictive covenants are enforceable." Docket No. 20 at 4. Respondent's "procedural skirmishes," and in particular its efforts (Docket Nos. 4 & 19) to avoid the first filed rule as applied to Georgia restrictive covenants in *Manuel*, 430 F.3d at 1135-37, should not prevent this Court from addressing Petitioners' challenge to restrictive covenants which, on their face, are void and unenforceable.

Petitioners' Motion (Docket No. 13) is hardly "premature and disingenuous." Fed.R.Civ.P 57 provides for a "speedy hearing" of declaratory judgment actions, and Fed.R.Civ.P. 1, effective as of December 1, 2015, obliges the *parties* to employ the rules "to secure the just, speedy and inexpensive

determination of every action." In turn, Rule 57 is consistent with O.C.G.A. § 9-4-5, and, as noted by the court in *Manuel*, 430 F.3d at 1138 n. 3, the *Erie* doctrine might require prompt adjudication under O.C.G.A. § 9-2-46(a). Petitioner's declaratory judgment action presents a facial attack to what CMGRP judicially admits, in its pleadings, to be covenants restricting Gallant's business activities from Georgia on behalf of her new employer, APA. Petitioners' Motion (Docket No. 13) complies with Local Rule 7.1.A., presents legal issues for resolution by the Court, and requires no discovery, as additional facts cannot save a restriction void on its face. See Docket 13-1 at 8, and cases cited therein. CMGRP has been given notice, via Petitioners' Motion, and Rule 7.1.B provides its due process opportunity to be heard. CMGRP, perhaps recognizing, consistent with its strategic procedural fencing, that it loses if Georgia law applies to Gallant's covenants, has chosen not to contest the merits of Petitioners' Motion.

CMGRP's judicial admission of the claimed language in its Code of Conduct (Docket No. 4-1 at Ex. 7, New York Complaint ¶¶ 25, 26 28; see Docket No. 13-1 at 3, 4), along with §§ 7.02 and 7.05 of the Gallant Employment Agreement (Docket No. 1-3) "identifies precisely the provisions on which they [Petitioners] are seeking a ruling." See Docket No. 21 at 4.

## IV. **Conclusion.**

If this Court has and retains jurisdiction, rather than remand this case to Fulton Superior Court by granting Petitioners Motion to Remand (Docket No. 7), it should deny Respondent's Motion to Dismiss or Stay (Docket No. 4) and grant Petitioners' Motion to Amend and Enter Declaratory Judgment (Docket No. 13), and provide the effective injunctive remedy requested, enjoining CMGRP from pursuing its claims against Gallant (and through her and its actions with her, APA) in New York.

Respectfully submitted this 21st day of April 2016.

BODKER, RAMSEY, ANDREWS,
WINOGRAD & WILDSTEIN, P.C.

By: /s/ Robert E. Rigrish
Robert E. Rigrish
Georgia Bar No. 605573
Harry J. Winograd
Georgia Bar No. 770926
One Securities Centre
3490 Piedmont Road
Suite 1400
Atlanta, Georgia 30305
404-351-1615 [telephone]
404-352-1285 [fax]
[e-mail]

Attorneys for Petitioners

Certificate of Service

I hereby certify that I have this 21st day of April 2016 electronically filed the foregoing Consolidated Reply Brief and its supporting declaration with the Clerk of Court using the CM/ECF system, which will send notification to the following CM/ECF participants, counsel for Respondents:

John W. Egan
Robert S. Whitman
SEYFARTH SAHW, LLP
620 Eight Avenue
P.O. Box 10018
New York, NY 10018-1405

Alexander C. Meier
Daniel P. Hart
SEYFARTH SAHW, LLP
Suite 2500
1075 Peachtree Street, NE
Atlanta, GA 30309

By: /s/ Robert E. Rigrish